'W. O. MUNKRES v. JOHN J. MCCASKILL *et al.*

No. 12,017. (68 Pac. 42.)

SYLLABUS BY THE COURT.

1. CONTRACT—*Exchange of Real Estate—Fraudulent Representations.* When, in a contract for the exchange of real estate, it is expressly stipulated that it is made subject to an investigation of the property of one party by the other, and that its force and effect shall depend on the result of such investigation, the party so agreeing to make investigation assumes the responsibility of making such full and complete examination of the property as he may desire to satisfy himself as to the truth or falsity of the representations made by the other party and the advisability of

making the exchange; and if, after examination, he signifies his satisfaction therewith by closing the trade and exchanging title papers, he cannot rescind the contract on the ground that he was induced to make it by false representations by the other party, unless some fraud be practiced upon him by the other party which prevents his making a full, fair and complete examination of the property.

2. Evidence— *Certified Copy of Plat.*  A certified copy of a plat on file or of record in a public office in a foreign state is not admissible in evidence in the courts of this state.  Such plat must be produced and identified by the custodian thereof, and a copy therefrom must be proved by the oath of such custodian to be a true and correct copy of the original plat on file or of record in his office, before it will be received in evidence.


Error from Chase district court; W. A. RANDOLPH, judge.   Opinion filed March 8, 1902.   Reversed.

*Madden Bros.*, and *Cochran & Butler*, for plaintiff in error.

*Redden, McKeever & Hayden*, and *F. A. Meckel*, for defendants in error.


The opinion of the court was delivered by

POLLOCK, J. : The defendant in error, John McCaskill, owned a ranch of 1700 acres in Chase county, encumbered to the extent of about $10,000, which he desired to trade for unencumbered property, and leave himself free from debt.   Plaintiff in error owned a tract of land in what is known as "Cat island," in the Missouri river, in Andrew county, Missouri, which he represented to contain 352¾ acres, and a large body of accretions made to said tract by operation of the river. Negotiations between the parties for an exchange of properties were brought about by one Arnold, to whom McCaskill had expressed his desire to sell his land, and, in the event a purchaser should be found, to pay a commission.   In May, 1899, Munkres visited the

McCaskill place, looked the ranch over, and the subject of a trade was fully discussed between the parties. No trade was consummated at this time and nothing further looking thereto appears to have been done between the parties until October 2 thereafter. On this day Munkres again visited the McCaskill place and the matter of trade was again discussed. This interview culminated in the parties entering into the following written agreement :

"COTTONWOOD FALLS, October 2, 1899.

"Terms of trade between John McCaskill and W. O. Munkres.

"McCaskill to give a good title to south one-half section 7, all section 8, west one-half 17, and all section 18, to said Munkres, subject to a lien of $10,000, $2000 of which will be due and draw ten per cent. interest from date of trade ; $8000 of which will be due October 1, with six per cent. interest paid up to October 1, 1899.

"To give immediate possession of pasture and lower corral, also of small house in which McCaskill now lives. Said W. O. Munkres will in consideration of above deed give to McCaskill a warranty deed to 352 acres of land near St. Joe, Mo., as described in the deed and abstract shown. Also a quitclaim deed to all his rights and title to certain adjoining land formed by accretion from the Missouri river. Also, to give said McCaskill full possession of all the said land in time to rent and work for crop of 1900.

"The deed given by McCaskill to Munkres is to be left with the State Exchange Bank to be delivered to Munkres at any time he shall pay the $2000 due, mentioned above, etc., and surrender to McCaskill his notes for that amount representing said notes.

"This trade is subject to an investigation of the Munkres land by McCaskill, and the above agreement is made as an outline for said trade, provided that the Munkres land is satisfactory to McCaskill.

JOHN McCASKILL.
W. O. MUNKRES."

Immediately after the making of this agreement the parties went to Missouri; McCaskill went upon and examined Munkres's land; and while doing so he asked Munkres to point out the lines and corners of the land, and was informed by the latter that he did not know where they were. Some talk. of having the land surveyed to ascertain the boundaries was engaged in, but the project was abandoned on account of the expense. Only a small portion of a day was consumed in making this examination, and the record shows no close inspection of either the deeded land or accretion land by McCaskill. There is but very slight, if any, testimony in the record that Munkres attempted in any way to prevent McCaskill from making as full and complete an investigation as he desired. The reason given why a more thorough examination was not made, as expressed by McCaskill, was "lack of time."

The parties returned to Chase county, and on the 11th day of October met at the office of Frew & Bailey, in Cottonwood Falls, where the abstract of title to Munkres's land was examined and approved. Deeds to the Chase county land were executed by McCaskill and wife and deposited with the State Exchange Bank in accordance with the terms of the written agreement. Deeds to Munkres's land, one a warranty deed conveying 352¾ acres of what the parties called the "deeded land," and a quitclaim deed to what is called the "accretion land," being accretions to the deeded land, were prepared at the same time and place. Munkres's wife not being present to execute the deeds, the same were taken to her for execution and returned to the bank for delivery to McCaskill. These deeds were delivered by the bank to McCaskill about the 23d day of October. Soon thereafter Mc-Caskill went to Savannah, the county seat of Andrew

county, Missouri, and lodged the deeds for record. He attempted to secure the services of the county surveyor to survey the land, but was unable to do so. He inquired the price of lumber and materials which he desired for the erection of certain buildings on the property, and again went, in company with one Scotton, a tenant on the place, to the property and made a more careful and extended examination than before. He ascertained that there were other parties claiming parts of the accretion land, and, also, that a portion of the deeded land conveyed was covered by the Missouri river. Becoming dissatisfied with his trade, he went to Savannah, procured his deeds after record, and wired the State Bank at Cottonwood Falls not to deliver his deeds to Munkres.

Upon his return home McCaskill at once instituted this action to cancel and set aside the contract and conveyances made, on the ground of fraudulent representations made by Munkres which induced him to make the trade. He tendered a reconveyance of the land to Munkres and secured a restraining order prohibiting the bank from receiving the $2000 and delivering his deed to Munkres, as the cashier of the bank had agreed in writing with Munkres at the time of their deposit under the original agreement. Thereupon Munkres tendered payment of the $2000 and demanded possession of the deeds to the McCaskill land, in accordance with the terms of his contract with McCaskill and his agreement with the cashier of the bank. This demand was refused by the cashier on account of the restraining order obtained and served on him. The bank was interpleaded in this action on account of its interest in the land and its right to receive the $2000 under the terms of the contract. Trial was had before the court without a jury, which

resulted in a judgment in favor of McCaskill and wife, and defendant brings error.

The general principles applicable to suits brought to set aside conveyances on the ground of fraudulent representations are well settled. As expressed by Mr. Chief Justice Fuller in *Farrar v. Churchill*, 135 U. S. 609, 10 Sup. Ct. 771, 34 L. Ed. 246:

"Fraud is never presumed; and where it is alleged the facts sustaining it must be clearly made out. The representation must be in regard to a material fact, must be false, and must be acted upon by the other party in ignorance of its falsity and with a reasonable belief that it was true. It must be the very ground on which the transaction took place, although it is not necessary that it should have been the sole cause, if it were proximate, immediate, and material."

The allegations of misrepresentation found in the amended petition upon which the case was tried cover ᴛ wide range. They include what was said between the parties before the execution of the contract of October 2 as well as subsequent thereto and while on the visit of McCaskill to make an examination of the property. The evidence found in the record is voluminous and takes the same wide range. It is evident that the case was tried by the court upon the theory that all conversations and matters transpiring between the parties at any time during the negotiations were equally open to investigation, and of equal importance in a determination of the question at issue.

It is assigned as error, and earnestly pressed upon us by counsel, that the merits of this controversy are largely affected by the contract of October 2 between the parties; that by the very terms and nature of this contract it is shown that McCaskill was unwill-

ing to repose confidence in the representations made by Munkres as to the character, condition and description of his property; that, being so unwilling, it was expressly stipulated that McCaskill should examine for himself, and, if satisfied, that the trade should be closed; if not, that there should be no trade; that by this contract McCaskill, on the one hand, assumed the burden of making such full and complete examination of the property as he might desire, and upon the result of his examination's proving satisfactory or unsatisfactory to himself the exchange of properties was to be determined; on the other hand, that by the terms of this contract it is shown that Munkres was unwilling to assume the responsibility of closing the déal without a personal examination of his property by McCaskill, and intended that if an exchange should be made the trade should depend upon McCaskill's personal knowledge after examination; in other words, that the parties by express contract agreed that the sale, if made, should depend upon an examination to the satisfaction of McCaskill, and, having thus contracted upon condition, after examination of the property made by McCaskill, and contract having been completed by the execution and exchange of title deeds, he cannot now be heard to say that he had the right to rely upon the representations of Munkres and did rely upon them to his injury.

We are impressed with the force of this argument. As has been seen, it is not sufficient to avoid a conveyance in equity to show that false representations in a material matter were made by the vendor and acted upon by the vendee to his injury in ignorance of their falsity, but the false representations made must be the very ground upon which the transaction

took place.   The vendee must not only have reason to believe that the representations made were true, but also have the right to rely upon their being true, and so rely.   In the case at bar, that McCaskill may say he relied upon the representations made by Munkres, he must show that he had the right to rely upon such representations.   The contract which he pleads in express terms states: *"This trade is subject to an investigation of the Munkres land by McCaskill, and the above agreement is made as an outline for said trade, provided that the Munkres land is satisfactory to McCaskill."*   Can it be said in the face of this agreement that McCaskill relied upon the representations made by Munkres and not upon his own examination?   Can it be argued that he had the right to rely upon representations made by Munkres when he expressly contracted that the trade should not be binding upon the parties until he had examined and was satisfied with Munkres's land?   Can it be urged that the representations of Munkres, and not his own personal examination, were the very grounds upon which the trade was closed, when the contract provides the contrary?

Although the authorities are not in entire harmony upon this proposition, yet we think the correct rule deducible therefrom is that a vendee may safely rely upon the truth of positive, material representations made by the vendor to induce the trade, which do in fact induce the trade, where the vendee does not know, and has not an equal opportunity of knowing or ascertaining, the truth or falsity of such representations ; but where it is expressly agreed that the vendee shall examine the property to satisfy himself, or undertakes to examine for the purpose of determining for himself the truth or falsity of the representations made by the vendor concerning it, and the advisability of making

the trade, he thus assumes the responsibility of acting upon his own judgment, and not upon the information imparted to him by the vendor, and in such case the vendor is liable only in case of some fraud practiced upon the vendee to prevent a full, fair and complete examination of the property. Mr. Kerr, in his work on Fraud and Mistake, page 75, says:

"If a man to whom a representation has been made knows at the time, or discovers before entering into a transaction, that the representation is false, or resorts to other means of knowledge open to him, and chooses to judge for himself in the matter, he cannot avail himself of the fact that there has been misrepresentation, or say that he has acted on the faith of the representation. Where, accordingly, an iron company had sent some of their directors for the express purpose of verifying the representations of a man respecting his works, who expressed their satisfaction with the proofs produced, it was held that the company had, by choosing to judge for themselves in the matter, precluded themselves from being able to say that they had been deceived by the representations of the vendor, and that it was their own fault if they had not availed themselves of all the knowledge, or means of knowledge, open to them. So, also, where a man had, before purchasing shares in a mine, visited the mine and examined into its condition, it was held that he had not relied on representations made to him by the vendor, and was not entitled to avoid the contract on the ground that they were false, the alleged misstatements being such as he was competent to detect. 'Cases,' said Lord Langdale, in *Clapham v. Shilleto*, 'frequently occur in which, upon entering into contracts, misrepresentations made by one party have not been in any degree relied on by the other. If the party to whom the representations were made himself resorted to the proper means of verification before entering into the contract, it may appear that he relied on the results of his own investigation and inquiry, and not upon the representations made to him by the other party.'"

In the case of *De Milt v. Hill*, 89 Hun (N. Y.) 56, 34 N. Y. Supp. 1060, it was held :

"Representations of a grantor which will entitle a grantee to relief in equity must be of such a character that the purchaser has no means of discovering their falsity. In fact, it has come to be a legal maxim that knowledge will be imputed to him who is able to inquire into a known thing. A court of equity will refuse its aid to those who, by their own negligence, have incurred the loss or suffered inconvenience. If a party does not avail himself of the knowledge within his reach, he will never be entitled to the aid of equity."

The author of American and English Encyclopedia of Law (2d ed.), volume 14, at page 117, gives the reason for the doctrine, as follows :

"This doctrine is not based upon any consideration for the party who has been guilty of the false representations, but upon the ground that public policy requires that persons shall be required to exercise at least ordinary prudence in their business dealings, instead of calling upon the courts to relieve them from the consequences of their inattention and negligence."

In the case of *Southern Development Co. v. Silva*, 125 U. S. 247, 8 Sup. Ct. 881, 31 L. Ed. 678, it was said by Mr. Justice Lamar :

"It is essential that the defendant's representations should have been acted on by complainant to his injury. Where the purchaser undertakes to make investigations of his own, and the vendor does nothing to prevent his investigation from being as full as he chooses to make it, the purchaser cannot afterwards allege that the vendor made misrepresentations. (Citing *Attwood v. Small*, 6 Cl. & Fin. 232 ; *Jennings v. Broughton*, 5 De G. M. & G. 126 ; *Tuck v. Downing*, 76 Ill. 71.)

In *Farrar v. Churchill*, supra, Chief Justice Fuller said:

"If the purchaser investigates for himself, and nothing is done to prevent his investigation from being as full as he chooses, he cannot say that he relied on the vendor's representations."

The precise proposition stated received the consideration of the supreme court of Wisconsin in *Farr v. Peterson and wife*, 91 Wis. 182, 64 N. W. 863, where it is held:

"One who was induced to purchase a farm by false and fraudulent representations of the vendor as to its value and the amount of hay produced on it cannot recover damages therefor if, in the exercise of ordinary care and prudence, he ought not, under the circumstances, to have relied upon the representations made to him or have accepted them as true without doing more than he did to ascertain their truth or falsity."

The case of *Speed v. Hollingsworth*, 54 Kan. 436, 38 Pac. 496, is relied upon by counsel for defendants in error as opposed to the foregoing doctrine and as decisive of this case. In that case, however, upon it being admitted that Speed had visited the farm before his purchase, the trial court refused to receive any evidence in support of his allegations of fraudulent representations. This was held error. It was alleged that Hollingsworth falsely stated the price at which the pasture land on the place was rented. This fact could not be determined by an examination of the property. It was also expressly alleged that false representations were made as to the quantity of bottom land on the farm ; that Speed implicitly relied on the representations made, and not his own judgment; that Speed was not a farmer, and could not determine by an examination the truth or falsity of such state-

ments for himself, and that Hollingsworth and his agents well knew this fact.  It was not shown in that case that any agreement existed between the parties that Speed should undertake to examine the property to satisfy himself of the truth or falsity of the representations made concerning it or the advisability of making the purchase.  Neither the purpose of his visit to the farm, nor the conditions and circumstances under which this visit was made, were shown.  In the case at bar, we are not left in doubt as to whether the making of the trade depended upon McCaskill's reliance upon the representations made. by Munkres or upon the examination's proving satisfactory.  The contract existing between the parties provided for such examination, and expressly made the trade conditional upon such examination's proving satisfactory to McCaskill.

As the case was determined upon a wrong theory of the law, and as the evidence of McCaskill, a witness in his own behalf, tends more to proof of negligence on his part in making the examination of the property than upon any fraud practiced by Munkres to prevent a full and fair examination of the property, or to induce McC__skill to refrain from such examination, we are of the opinion that a retrial must be ordered.

It is again urged that upon the trial a copy of a plat of "Cat island," certified by the county surveyor of Andrew county, Missouri, was received in evidence, and that the reception of this evidence is error. This copy from a plat of the original survey tended to show by inspection the course of the river and situation of the land with reference thereto, to which the deed of Munkres appears to conform.  The deposition of the county surveyor was taken, and another plat,

made at the instance of McCaskill from a survey of
the property soon after the trade was made, was prop-
erly proved, and received in evidence. This plat
showed portions of the land conveyed to be covered
by the river. The court was thus enabled by an ex-
amination and comparison of the two plats to deter-
mine the extent of loss of land by change in the bed
of the river. From this it will be seen that, upon a
showing being made that Munkres knew and falsely
represented the facts in regard to such change in the
condition of the land, and that McCaskill did not know
and could not ascertain this fact from his examina-
tion of the property, the evidence received becomes
material. Hence, the only remaining question is,
Was the proof offered sufficient to authorize the recep-
tion of this evidence? This plat is a foreign docu-
ment and not the record of a foreign court. What the
law of the state of Missouri is as to requiring such
survey to be made or record thereof kept was not
proved. What the laws of the state are as to the man-
ner of authenticating such plats as evidenced in the
courts of that state, or whether the authentication
made in this case is sufficient to entitle the copy in
question to be received in evidence in the courts of
that state, we are not advised. We are of the opinion
that our statute law does not provide for the authen-
tication of such a foreign document in the manner
here attempted for use as evidence upon a trial in the
courts of this state, but that such record of a foreign
state must be proved by the oath of the proper cus-
todian to be a true and correct copy of the original on
file or of record in a public office before it will be
received in evidence.

The remaining question of error we have examined,
and are of the opinion that the deposition complained

of was properly received in evidence under the circumstances of this case.

It follows that the judgment must be reversed for further proceedings in conformity with the views herein expressed.

DOSTER, C.J., JOHNSTON, ELLIS, JJ., concurring.