No. 88,514

TIM and LORETTA ALIRES, *Appellees,* v. JAMES and DOROTHY McGEHEE, *Appellants.*

(85 P.3d 1191)

Opinion filed March 19, 2004.

*Kerry E. McQueen,* of Sharp, McQueen, McKinley, Dreiling & McQueen, P.A., of Liberal, argued the cause, and *Stephen C. Griffis* was with him on the briefs for appellants.

*Clinton B. Peterson,* of Peterson Law Office, of Liberal, argued the cause and was on the brief for appellees.

The opinion was delivered by

LUCKERT, J.: Tim and Loretta Alires purchased a house from James and Dorothy McGehee and sued when the basement leaked. After a bench trial, the district court found that the McGehees had fraudulently misrepresented the condition of the house. The district court entered judgment in favor of the Alireses for $25,621.68. The McGehees appealed, and a majority of the Court of Appeals panel reversed. The majority found the evidence did not establish that the McGehees made untrue statements about the basement with the intent to deceive or fraudulently induce the sale or that the Alireses were justified in relying on the alleged misrepresentations. *Alires v. McGehee*, No. 88,514, unpublished opinion filed September 12, 2003. This court granted the Alireses' petition for review.

On appeal, the Alireses argue the Court of Appeals, applying the wrong standard of review, erroneously concluded that the McGehees had no intent to deceive and that the Alireses were not justified in relying upon the McGehees' statements. The Alireses assert that the judgment entered by the district court should be affirmed.

## Facts

The fact that the basement leaked was discovered very soon after the Alireses purchased the house in September 2000. Mr. Alires watered the front lawn and then discovered water leaking into the basement. The basement leaked twice more in October 2000, once during a rainstorm and once when a main water line broke in the alley behind the house.

The McGehees, as sellers, had made several representations regarding the condition of the basement. Mr. Alires testified that, upon first touring the home, he asked Mrs. McGehee whether the basement leaked and she said, "No." The McGehees' real estate agent, Janie Rine, who showed the house to the Alireses, testified that she heard this exchange.

In addition, Mrs. McGehee completed and signed a seller's property disclosure statement, which contained the question: "Has there ever been leaking or seepage in the basement or crawl

space?" She answered: "Yes," and in the space provided for explanation wrote: "Repaired broken pipe."

At trial Mrs. McGehee testified to instances of water leakage in the basement which she had not disclosed on the seller's property disclosure statement. She testified that she had discovered water stains on carpet in two different rooms in the basement during the last 2 to 3 years. She believed moisture had come in through the basement windows, and this was the reason the McGehees had their patio repaired. On another occasion, a broken water heater had leaked in the utility room. Mrs. McGehee also testified about the broken water pipes in a bathroom which were mentioned in the seller's disclosure statement. She stated that she simply forgot to mention the other incidences of water leakage in the disclosure. Mrs. McGehee explained that she underwent surgery for a brain tumor in 1998 and her short-term memory was affected. She also testified her husband had a massive stroke in 1985, just before the couple purchased the house, which caused him to have difficulty speaking. Therefore, he was not involved in providing information to the buyers.

Mr. Alires testified that, had he known the history of leaking in the basement, he would not have purchased the house. Rine confirmed that she knew Mr. Alires was particularly concerned about leaky basements.

Mr. Alires also testified that as soon as he discovered that the basement leaked, he called Rine who in turn contacted Mrs. McGehee. According to Mr. Alires, Rine said Mrs. McGehee told her there was a crack around the foundation and that the McGehees avoided watering too close to the house. Rine testified that when she called Mrs. McGehee to tell her about the leaking, Mrs. McGehee responded that there was no warranty on the house and that the McGehees did not water close to the house. A few days later, Mrs. McGehee told Rine that they had no problems watering near the foundation. Rine also explained that Mrs. McGehee never said there was a crack in the foundation, but that there had been a crack in the ground near the foundation and the McGehees had concrete work done as a result.

The contractor who performed the concrete work in May 1999 testified that he removed and replaced a crumbling patio and put in a sidewalk around the house. He explained that the existing patio was sloping toward the house and causing a water leak. His work established a grade so that water would flow away from the house.

Robert Smith, owner of a basement and foundation repair company, testified that the concrete in the Alireses' house was deteriorating and showed both angular and horizontal cracking, which indicated inward wall movement. Smith observed that the brick and mortar on the outside of the house showed stair-step type cracks. He also observed cracking inside where the walls were not covered.

However, his inspection was not conducted until after the home was purchased even though, in the original contract, the Alireses reserved the right to conduct mechanical, structural, and wood infestation inspections of the house. If defects were found, the McGehees agreed to pay up to $250 for repairs. If the cost of repairs exceeded that amount, either the Alireses or the McGehees could pay the excess amount or the contract could be canceled. The contract specifically provided that the house was being purchased "as is." The contract also included a waiver of all claims arising because of any patent defects in the property, stating:

"If inspections are not performed regarding all or part of the property, Buyer is bound by whatever information an inspection would have revealed, and waives any claim, right or cause of action relating to or arising from any condition of the property that would have been apparent had inspections been performed."

In an addendum to the contract covering certain repairs to be made before closing, the Alireses agreed to waive the inspections. Mr. Alires testified that he did not have the foundation inspected because he trusted Mrs. McGehee's representation that the basement did not leak. He agreed that, had such an inspection been done, a determination about the condition of the basement could have been made before closing.

At some point, the McGehees attempted to back out of the sales contract because Mrs. McGehee was concerned about finding a new place to live. The Alireses refused to allow the cancellation of the contract, and the sale went forward.

After hearing the evidence, the trial court determined that Mrs. McGehee knew the basement leaked, failed to disclose the fact to the Alireses, and misrepresented the nature of past water problems. The trial court recognized the contractual provisions regarding inspections, including the waiver for claims arising from defects which would have been detected by inspection. However, the court entered judgment for the Alireses, finding that Mrs. McGehee had superior knowledge and an obligation to disclose the past leakage problem when she knew the Alireses were not having an inspection performed.

### Court of Appeals Decision

On appeal, a majority of the Court of Appeals panel reversed. The majority noted that Mrs. McGehee had attempted to back out of the sales contract at one point, but the Alireses would not agree to the cancellation. The majority therefore concluded that the McGehees could not have had any intent to deceive or fraudulently induce the Alireses to purchase the house. The majority also found that the Alireses were not justified in relying on the alleged misrepresentations because the seller's disclosure statement contained a section specifically allowing the Alireses to note any important representations being relied upon and the Alireses wrote nothing in that section.

Judge Green dissented, disagreeing with the majority's reasoning that the Alireses' claim of fraud should be cut off simply because Mrs. McGehee, who made the affirmative misrepresentations, attempted to back out of the contract. The dissent also noted that the section of the seller's disclosure statement relied upon by the majority contained the following acknowledgment: "I state that no important representations concerning the condition of the property are being relied upon by me *except as disclosed above* or as fully set forth as follows . . . ." (Emphasis added.) The basement leakage caused by a broken pipe was disclosed by the McGehees in the "above" section of the seller's disclosure. The dissent characterized this as a partial disclosure which was materially misleading.

This court granted the Alireses' petition for review.

*Did the Court of Appeals Erroneously Conclude That the McGehees Had No Intent to Deceive and That the Alireses Were Not Justified in Relying upon the McGehees' Statements?*

Although the majority of the Court of Appeals did not state the applicable standard of review, it did cite *Waxse v. Reserve Life Ins. Co,* 248 Kan. 582, 586, 809 P.2d 533 (1991), for the premise that fraud is never presumed and must be established by clear and convincing evidence. *Waxse* also states the standard of review: "The existence of fraud is normally a question of fact. Therefore, upon appeal, our standard of review is limited to determining whether the district court's findings of fact are supported by substantial competent evidence and whether the findings are sufficient to support the district court's conclusions of law." 248 Kan. at 586. The elements of an action for fraud include an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or with reckless disregard for the truth, upon which another party justifiably relies and acts to his or her detriment. *Gerhardt v. Harris,* 261 Kan. 1007, 1013, 934 P.2d 976 (1997).

The Alireses argue that the Court of Appeals majority did not apply this standard of review, but instead concluded that "the evidence does not establish" all of the elements of fraud and, in support of its decision, relied upon evidence not mentioned by the district court. Additionally, the Alireses, in their petition for review, argue that the majority's ruling sets a dangerous precedent in holding that because the McGehees attempted to back out of the contract at one point, even if they did make misrepresentations about the house, they could not have had any intent to deceive or fraudulently induce the Alireses to purchase the house. The majority cited no authority for this ruling. Under the majority's rationale, the Alireses argue, a person could freely perpetrate fraud to induce another to enter a contract, attempt to back out of the contract without disclosing the fraud, and then escape all liability.

The Alireses' argument is persuasive. The evidence showed that Mrs. McGehee attempted to back out of the sale at one point because she was concerned about finding a new place to live. She

never mentioned the other basement leaks or corrected her prior misstatements. The fact that Mrs. McGehee later wanted out of the deal has no bearing on whether her misrepresentations, made before the Alireses entered into the contract, were made with the intent to deceive or with reckless disregard for the truth. See Restatement (Second) of Contracts § 164 (1979) (when party induced to enter contract by fraudulent or material misrepresentation upon which party justified in relying, contract voidable, not void). At best there would be a factual question regarding her intent; this would be a question of fact, not one for determination at the appellate level. *Waxse*, 248 Kan. at 586. Therefore, the Court of Appeals erroneously determined that there was no intent to deceive.

Next, the majority ruled that the Alireses were not justified in relying on the alleged misrepresentations because the seller's disclosure statement contained a section specifically allowing the Alireses to note any important representations being relied upon and the Alireses wrote nothing in that section. The dissent aptly noted this write-in section was for representations not mentioned in the "above" section of the contract, the section where the McGehees disclosed the basement leakage caused by a broken pipe but not the other incidences of leakage. The dissent characterized this as a partial disclosure, citing *Sparks v. Guaranty State Bank*, 182 Kan. 165, 168, 318 P.2d 1062 (1957), for the premise that when a person makes an equivocal, evasive, or misleading statement which is literally true but fails to disclose the whole truth, that person has made an affirmative misrepresentation.

Again, we agree with the dissent. The seller's disclosure form was integrated into the contract, and one of the alleged fraudulent representations was contained within the disclosure form itself. There was no need for the Alireses to write in the representation on which they were relying because Mrs. McGehee's representation that the basement had leaked only when broken pipes needed repairing was already listed.

However, this does not dispose of the issue of reasonable reliance and the other issues raised by the McGehees on appeal. Other issues not addressed by the Court of Appeals remain which we will consider pursuant to Supreme Court Rule 8.03(h)(3) (2003 Kan.

Ct. R. Annot. 61) ("issues decided by the district court were presented to, but not decided by, the Court of Appeals," this court may consider and decide those issues).

### Did the District Court Err in Ruling in Favor of the Alireses?

The remaining issues raised in the parties' original briefs before the Court of Appeals may be summarized as: (1) whether the trial court's finding that the McGehees knew or had reason to know of prior water leakage in the basement was supported by substantial competent evidence and (2) whether the Alireses' agreement to purchase the house "as is" and their waiver of the right to have inspections performed abrogated their claim of fraud.

The first issue requires a review of the relevant district court findings, which we have summarized as:

1. Prior to the sale, the Alireses asked Mrs. McGehee whether the basement leaked and she said no.

2. Under the contract, the Alireses had the right to have various inspections performed but chose not to do so.

3. Mrs. McGehee knew the basement leaked and failed to disclose that fact to the Alireses even though she knew they were not having the house inspected.

4. After being informed that the Alireses had experienced leaking in the basement as a result of watering the front yard, Mrs. McGehee told the realtor "that's why we don't water up close to the house." Mrs. McGehee denied making that statement.

5. Approximately 1 year before the sale, the McGehees had concrete work done in an attempt to correct water draining towards the house and basement.

6. Having lived in the house for more than 15 years, the McGehees must have had personal knowledge of the fact that the basement leaked.

The McGehees specifically take issue with the district court's finding that, having lived in the house for 15 years, they must have known about the leakage problem. In support, the McGehees cite *Miles v. Love*, 1 Kan. App. 2d 630, 632, 573 P.2d 622, *rev. denied* 225 Kan. 845 (1977), for the premise that implied knowledge is insufficient to maintain a cause of action for fraud and that actual

knowledge is required. However, the McGehees ignore the fact that the evidence established actual, not implied, knowledge on their part. Mrs. McGehee testified about two other incidents of leakage which she claimed she had forgotten to mention in the seller's disclosure statement. In one of those incidents, Mrs. McGehee believed water had come in through basement windows and the McGehees had the patio repaired as a result. The contractor who performed the concrete work testified that he spoke with Mrs. McGehee about the reason they were performing the work, which was because of a water leak. This evidence was sufficient to establish that the McGehees had actual knowledge of a water leakage problem in the basement which they did not disclose.

Our review of the record reveals substantial competent evidence to support the findings of the trial court that Mrs. McGehee made untrue statements of fact and knew the statements were untrue.

Next, the McGehees argue that, as part of the real estate contract, they bargained for limited liability by including provisions that the Alireses purchased the house "as is," obtained the right to have the house inspected for structural defects, and, if they elected not to have an inspection, waived any claim for defects which would have been apparent had an inspection been performed. Alternatively, the McGehees argue that there could not have been reasonable reliance upon the alleged misrepresentation, as a matter of law, because of the disclaimer or waiver provisions.

The seller's property disclosure statement, which was integrated into the contract, stated: "The Seller discloses the following information with the knowledge that even though this is not a warranty, prospective Buyers may rely on this information in deciding whether, and on what terms, to purchase the subject real property." At the end of the disclosure statement was a buyer's acknowledgment and agreement, signed by the Alireses, which provided:

"1. I acknowledge that I have read and received a signed copy of the Seller's Property Disclosure Statement from the Seller, the Seller's agent, or transaction broker.

"2. I have carefully inspected the property. Subject to any inspections allowed under my contract with Seller, I agree to purchase the property in its present

condition only, without warranties or guarantees of any kind by Seller or any real estate licensee concerning the condition or value of the property.

"3. I agree to verify any of the above information that is important to me by an independent investigation of my own. I have been advised to have the property examined by professional inspectors.

"4. I acknowledge that neither Seller nor any real estate licensee involved in this transaction is an expert at detecting or repairing physical defects in the property. I state that no important representations concerning the condition of the property are being relied upon by me except as disclosed above or as fully set forth as follows: _____."

As previously discussed, the partial disclosure regarding past water leakage was included in the "disclosed above" section. However, the Court of Appeals did not discuss other contract provisions regarding the issues of reliance and waiver of claims. Conspicuously displayed at the top of the disclosure form was the following: "THIS STATEMENT . . . IS NOT A WARRANTY OF ANY KIND BY THE SELLER(S) OR ANY REAL ESTATE LICENSEE IN THIS TRANSACTION, AND SHOULD NOT BE ACCEPTED AS A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE BUYER MAY WISH TO OBTAIN."

The contract also contained the following paragraph regarding inspections:

"Buyer and Seller agree that the real estate licensees involved in this transaction are not experts regarding whether any environmental or health hazards, defects in the mechanical equipment or systems, structural defects, or damage from wood destroying insects exists in and on the property. Buyer and Seller should seek expert advice and obtain inspections to determine if hazards, defects or damage exist in and on the property. If inspections are not performed regarding all or part of the property, Buyer is bound by whatever information an inspection would have revealed, and waives any claim, right or cause of action relating to or arising from any condition of the property that would have been apparent had inspections been performed. Unless otherwise provided in paragraphs relating to specific inspections, Buyer accepts the property in its current condition. This shall not be deemed a waiver or modification of any implied warranties which may exist."

The McGehees argue that these contractual provisions should be given effect and should bar the Alireses' cause of action, citing *Hamtil v. J.C. Nichols Real Estate*, 22 Kan. App. 2d 809, 923 P.2d 513 (1996), and *Boegel v. Colorado Nat'l Bank of Denver*, 18 Kan. App. 2d 546, 857 P.2d 1362, *rev. denied* 253 Kan. 856 (1993). The

Alireses argue that because the contract was fraudulently induced, the court should ignore those terms of the contract wherein the McGehees attempted to limit their own liability.

*Hamtil* involved a buyer's acknowledgment and agreement essentially identical to the one used in this case. In *Hamtil*, the buyers were given a seller's disclosure form stating the sellers knew of no water leakage or damage or any foundation problems in the house. The buyers had inspections performed which did not reveal any problems. Shortly after taking possession, the buyers discovered water damage and rotted wood. They sued the realty company for negligence and negligent misrepresentation. The district court denied the realty company's motion for summary judgment, holding that public policy "should not allow the language set out in the Buyer's Acknowledgment and Agreement . . . to bar the actions by home buyers against real estate brokers for negligent misrepresentation." 22 Kan. App. 2d at 811.

The Court of Appeals reversed, citing *Boegel* for the premise that courts will enforce contractual provisions entered into knowingly and voluntarily. *Hamtil*, 22 Kan. App. 2d at 812-14. The *Hamtil* court found that the Buyer's Acknowledgment and Agreement was not contrary to public policy and should be enforced. In so ruling, the court noted that the buyers had inspected the property themselves and any damage apparent the day after the sale should have been apparent before they entered into the contract; the buyers chose to rely on professional inspectors, which was in itself an expression of not relying on any statement made by a sales agent; and the buyers had the advice of an attorney before signing the Buyer's Acknowledgment and Agreement. 22 Kan. App. 2d at 813.

Similar to the Court of Appeals' conclusion in this case, the *Hamtil* court noted that the sales agreement contained blank lines where the buyers could list any representations upon which they were relying, but the buyers made no notations in the blanks. 22 Kan. App. 2d at 813-14.

There are two distinctions between *Hamtil* and the present case. First, in *Hamtil,* the buyers were suing the realtors. If the realtors had made any representations to the buyers, they would not have been included in the "above" section of the seller's disclosure state-

ment because that form, by its very nature, lists only disclosures made by the sellers and not the realtors. Second, and more criti-. cally, the buyers in *Hamtil* alleged negligence and negligent misrepresentation, while the buyers in this case alleged fraud. *Hamtil* stated that " 'competent parties may make contracts on their own terms, provided they are neither illegal nor contrary to public policy, and that *in the absence of fraud*, mistake, or duress a party who has fairly and voluntarily entered into such a contract is bound.' " (Emphasis added.) 22 Kan. App. 2d at 813 (quoting *Adams v. John Deere Co.*, 13 Kan. App. 2d 489, 492, 774 P.2d 355 [1989]). This conclusion is consistent with the majority rule that an "as is" provision in a real estate contract does not bar a buyer's claim based on fraud or intentional misrepresentation. See Annot., *Construction and Effect of Provision in Contract for Sale of Realty by Which Purchaser Agrees to Take Property "As Is" or in its Existing Condition*, 8 A.L.R.5th 312.

In *Boegel*, the buyer appealed the jury's verdict denying his claim for fraudulent concealment against the bank that sold him a farm which included irrigation equipment. Boegel's purchase agreement stated that he was relying upon his own inspection and not upon any express or implied warranty or representation being made by the seller and that the farm was being sold "as is where is." Boegel did not have the farm's irrigation systems tested or inspected. After the sale closed, Boegel learned that several wells were in poor condition. Evidence at trial revealed that the bank did not disclose its knowledge, or constructive knowledge, that several wells were not working optimally.

The Court of Appeals affirmed the jury's verdict, finding that the seller had bargained for limited liability and that Boegel had contractually assumed a duty to inspect the property. 18 Kan. App. 2d at 554. The key issue was the reasonableness of Boegel's reliance on the Bank's representations. Boegel, like the Alireses, argued that the seller knew that he, as buyer, was mistaken and relying upon the seller's representations. The Court of Appeals rejected this argument, concluding that the contract required that the buyer not rely on the express or implied representations of the seller; rather,

the contract required the buyer to purchase the property based upon his own representations. 18 Kan. App. 2d at 552.

The court also briefly considered the seller's argument that Boegel's claim should not have been allowed to proceed to trial in the first place and determined it need not reach the issue; however, the court noted that "to allow Boegel to proceed to trial on his claim of fraudulent concealment seems to nullify the limited liability for which the Bank bargained." 18 Kan. App. 2d at 554.

The Alireses argue that *Boegel* is distinguishable because it involved a claim of fraudulent concealment versus active fraud, and the district court apparently adopted this argument. To prove fraudulent concealment, a plaintiff must establish that the party concealing facts was under a legal or equitable duty to communicate those facts to the plaintiff. 18 Kan. App. 2d at 549. No such duty was involved in this case where the McGehees were alleged to have made affirmative misstatements about the condition of the basement. However, the Alireses' attempt to distinguish *Boegel* ignores the fact that the bank's agent represented to Boegel that all but one well were in "good shape." 18 Kan. App. 2d at 547. Thus, a misrepresentation was made. Further, it ignores the Court of Appeals' conclusion that "the contract imposed upon the buyer a duty in inspect and to rely on his own inspection rather than upon the seller's *express* or implied representations." (Emphasis added.) 18 Kan. App. 2d at 554.

Additionally, the buyers in this case, the Alireses, not only contractually assumed a duty to inspect the property and failed to have the property inspected, but the Alireses agreed that if they failed to have inspections performed, they waived "any claim, right or cause of action relating to or arising from any condition of the property that would have been apparent had inspections been performed." Thus, in order to prove their case, it was incumbent upon the Alireses to provide evidence that, even if an inspection had been performed, the water leakage problems in the basement would not have been apparent. The Alireses provided no such evidence. To the contrary, under cross-examination, Mr. Alires admitted that, had an inspection been done, a determination about

the condition of the basement could have been made before closing.

Still, the Alireses assert that this waiver should not be given effect because it was induced by the misrepresentation. This brings into question whether their reliance upon the representation was reasonable. This court has previously addressed a similar factual situation. In *Munkres v. McCaskill*, 64 Kan. 516, 68 Pac. 42 (1902), a case cited in the McGehees' reply brief, the parties entered into an agreement to exchange land subject to a stipulation that the contract should not be binding until each party had investigated the property of the other and each assumed the responsibility to make a full, fair, and complete examination of the property to be satisfied as to the truth or falsity of the representations made by the other and the advisability of making the exchange. The *Munkres* court held that after one of the parties made the examination, signified satisfaction, and closed the trade by exchanging title papers, such party could not rescind the contract upon the ground that the party was induced to make the contract in reliance upon false representations made by the other party, unless the other party fraudulently prevented the making of a full, fair, and complete examination of the property. 64 Kan. 516, Syl. ¶ 1.

In contrast, in *Fox v. Wilson*, 211 Kan. 563, Syl. ¶ 9, 507 P.2d 252 (1973), we concluded that where a contract is induced by a false representation of fact, it is not a defense that the buyer could have discovered the falsity of the representation if due diligence had been exercised. A critical distinction between the two outcomes is the agreement in *Munkres* to undertake an investigation; the fact that there was an undertaking to investigate relates to both the issues of whether the representation was material and of whether the recipient of the information reasonably relied upon the representation. See Restatement (Second) of Contract § 167, comment b; Restatement (Second) of Contract § 172, comment b.

Under the facts of this case, the buyer of real estate could not reasonably rely upon representations of the seller when the truth or falsity of the representation would have been revealed by an inspection of the subject property and the misrepresentations were made prior to or as part of the contract in which the buyer con-

tracted for the right to inspect, agreed that the statements of the seller were not warranties and should not replace the right of inspection, declined inspection, and waived any claims arising from defects which would have been revealed by an inspection. There is no showing in the record that the subsequent contract addendum which contained the waiver of the right to inspect was induced by any additional misrepresentations of the seller. Thus, although we disagree with the analysis of the Court of Appeals, we reach the same conclusion that the Alireses were not justified in their reliance upon the misrepresentations of Mrs. McGehee.

Having reached this conclusion, we need not address other issues raised by the McGehees.

We affirm the Court of Appeals decision reversing the judgment of the district court.