(923 P.2d 513)
No. 74,042

LAWRENCE W. HAMTIL, M.D., and MARGARET J. HAMTIL, *Appellees*, v. J.C. NICHOLS REAL ESTATE, GABRIELLE JARVIS, and ANNE ABBOTT, *Appellants*, and WALTER HERRSTROM; MARY HERRSTROM; W.B. McCLOUD & Co., INC., d/b/a SEARS AUTHORIZED PEST CONTROL; WAYNE LUDDEN; BRUCE KELLY d/b/a CUSTOM HOME INSPECTIONS; and STEPHEN T. ADAMS, *Defendants*.

Opinion filed August 30, 1996.

*Bruce Keplinger*, of Norris, Keplinger & Logan, L.L.C., of Overland Park, for appellants.

*L. D. McDonald, Jr.*, of McDonald Law Firm, P.A., of Overland Park, for appellees.

*Mark A. Buck*, of Davis, Unrein, Hummer & Buck, L.L.P., of Topeka, for *amicus curiae* Kansas Association of Realtors.

Before ROYSE, P.J., GERNON, J., and MARLA J. LUCKERT, District Judge, assigned.

GERNON, J.: This is an interlocutory appeal pursuant to K.S.A. 60-2102(b) and Kansas Supreme Court Rule 4.01 (1995 Kan. Ct. R. Annot. 23).

The facts of this dispute center on the sale of a residence in Johnson County and the weight and wording of a "Buyer's Acknowledgement and Agreement."

The parties included in this appeal are:

(a) Lawrence and Margaret Hamtil, plaintiffs in district court, appellees here, purchasers of real estate;

(b) J.C. Nichols Real Estate (Nichols), appellant here; and

(c) Anne Abbott and Gabrielle Jarvis, appellants here, agents of Nichols.

Others named or involved in the dispute include:

(a) Walter and Mary Herrstrom, sellers;

(b) Wayne Ludden, termite inspector, employed by W. B. McCloud & Co., Inc., d/b/a Sears Authorized Pest Control;

(c) Stephen T. Adams, attorney retained by the Hamtils to represent them in the purchase of the property; and

(d) Bruce Kelly d/b/a Custom Home Inspections, who performed mechanical and structural inspection of the property.

The Kansas Association of Realtors filed an *amicus curiae* brief.

Abbott and Jarvis were listing agents for real estate owned by the Herrstroms. The Hamtils viewed the property by themselves the first time they inspected the property and returned 3 days later, with Jarvis, to tour the house again.

The Hamtils signed a contract to purchase the house and an agency disclosure agreement.

The Hamtils were given a Seller's Disclosure Statement which stated that the Herrstroms did not know of any water leakage or damage in or to the house and that they were not aware of any problems with the foundation or the roof of the house. The statement revealed that the house had been treated for termites in 1985 and had been inspected annually since. There was no mention of any termite damage.

The Hamtils contacted Bruce Kelly of Custom Home Inspections and Wayne Ludden, a termite inspector, to inspect the house. Neither reported any significant problems with the house.

The sale closed on July 30, 1993, and the Hamtils took possession on July 31. They immediately discovered that water had leaked into the house at several places and that there was rotted wood throughout the house.

The Hamtils sued everyone and every entity who had any contact with the house, its inspections, or the paperwork associated with the sale.

The Hamtils asserted negligence and negligent misrepresentation claims against Nichols and its agents, Abbott and Jarvis. They alleged the realtors made false statements about the condition of the house.

Nichols, Abbott, and Jarvis moved for summary judgment, contending that the Buyers Acknowledgement and Agreement stated that the Hamtils were not relying on any representations made by the realtors. The trial court denied the motion, stating that "the Court believes that the public policy of Kansas should not allow the language set out in the Buyer's Acknowledgment and Agreement . . . to bar actions by home buyers against real estate brokers for negligent misrepresentation."

We reverse and remand with directions that summary judgment be entered in favor of Nichols, Abbott, and Jarvis.

The issue before us is whether the Buyer's Acknowledgement and Agreement is contrary to public policy.

The Buyer's Acknowledgement and Agreement provides, in relevant part:

"1. I HAVE CAREFULLY INSPECTED THE PROPERTY. SUBJECT TO ANY INSPECTIONS ALLOWED UNDER MY CONTRACT WITH SELLER, (And repairs to be made as therein required), I AGREE TO PURCHASE THE PROPERTY IN ITS PRESENT CONDITION ONLY, WITHOUT WARRANTIES OR GUARANTES OF ANY KIND BY SELLER OR ANY REALTOR CONCERNING THE CONDITION OR VALUE OF THE PROPERTY.

"2. I AGREE TO VERIFY ANY OF THE ABOVE INFORMATION THAT IS IMPORTANT TO ME BY AN INDEPENDENT INVESTIGATION OF MY OWN. I HAVE BEEN ADVISED TO HAVE THE PROPERTY EXAMINED BY PROFESSIONAL INSPECTORS.

"3. I ACKNOWLEDGE THAT NEITHER SELLER NOR ANY REALTOR INVOLVED IN THIS TRANSACTION IS AN EXPERT AT DETECTING OR REPAIRING PHYSICAL DEFECTS IN THE PROPERTY. I STATE THAT NO IMPORTANT REPRESENTATIONS CONCERNING THE CONDITION OF THE PROPERTY ARE BEING RELIED UPON BY ME EXCEPT AS DISCLOSED ABOVE OR AS FULLY SET FORTH AS FOLLOWS:

_____
_____."

The Hamtils signed the document after conferring with an attorney.

This issue involves a question of law; therefore, this court's scope of review is unlimited. *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, 283, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995).

Each of the briefs filed cites to the recent case of *Mahler v. Keenan Real Estate, Inc.*, 255 Kan. 593, 876 P.2d 609 (1994). *Mahler*, quoting from *Bevins v. Ballard*, 655 P.2d 757, 763 (Alaska 1982), states: " '[W]e hold that a purchaser who relies on a material misrepresentation, even though innocently made, has a cause of action against the broker originating or communicating the misrepresentation.' "

However, *Mahler*, quoting *Bevins*, 655 P.2d at 763, also states:

" 'Brokers, in turn, can protect themselves from liability by investigating the owner's statements, or by disclaiming knowledge, by requiring the seller to sign at the time of listing a statement setting forth representations which will be made, certifying that they are true and providing for indemnification if they are not. *See Goldman v. Hart*, 134 Ga. App. 422, 214 S.E.2d 670 (1975).' " 255 Kan. at 605.

The Hamtils cite several other cases from other jurisdictions to support their claims. None of the cases cited, however, involve a disclaimer like the one here and, while interesting, are of little value.

Nichols, Abbott, and Jarvis argue that the agreement here is similar to an "as is" clause, which Kansas has approved in the past.

In *Boegel v. Colorado Nat'l Bank of Denver*, 18 Kan. App. 2d 546, 857 P.2d 1362, *rev. denied* 253 Kan. 856 (1993), Boegel appealed the jury's decision to deny his fraudulent concealment claim in the purchase of a farm. The purchase agreement that Boegel signed contained the following language:

" 'BUYER acknowledges purchasing hereunder based on BUYER'S inspection and not upon any express or implied warranty or representation made by SELLER or SELLER'S agents, it being specifically agreed that the Premises and all irrigation equipment thereon, including, but not necessarily limited to engines, pumps, gearheads and center pivot sprinklers being sold "as is where is." ' " 18 Kan. App. 2d at 548.

Before signing the agreement, Boegel drove by the irrigation systems, but he neither tested them nor discussed their life expectancy with anyone. After the deal closed, Boegel learned that sev-

eral of the wells were in poor condition. Boegel then brought an action against the seller alleging that the seller fraudulently concealed information concerning defects in the irrigation wells.

In finding Boegel's contentions meritless, the court emphasized that "[t]he contract expressly provided that Boegel agreed to buy the property based upon the results of his own inspection and not based on any express or implied warranty or representation made by the [seller]." 18 Kan. App. 2d at 550. The court also found the seller had "bargained for limited liability, and Boegel contractually assumed a duty to inspect the property." 18 Kan. App. 2d at 554. The court concluded by recognizing that the seller's limited liability would be nullified if Boegel's claim for fraudulent concealment was permitted. 18 Kan. App. 2d at 554.

*Boegel* stands for the proposition that courts will enforce contractual provisions entered into knowingly and voluntarily.

Applying the reasoning in the cases cited, we conclude that Nichols, Abbott, and Jarvis are entitled to summary judgment and that there is no public policy which outweighs the contractual provisions entered into by the parties.

We arrive at this conclusion after considering:

(1) The Hamtils inspected the property themselves on more than one occasion. What was apparent the day after the sale should have been apparent before they signed any contract or agreement;

(2) the Hamtils apparently chose to rely on their own professional inspectors, which in itself is an expression of not relying on any statement made by a sales agent, if any was made, who was clearly the agent of the seller; and

(3) the Hamtils had the advice of an attorney before signing the Buyer's Acknowledgement and Agreement.

Kansas follows the "general principle that competent parties may make contracts on their own terms, provided they are neither illegal nor contrary to public policy, and that in the absence of fraud, mistake, or duress a party who has fairly and voluntarily entered into such a contract is bound." *Adams v. John Deere Co.*, 13 Kan. App. 2d 489, 492, 774 P.2d 355 (1989). The agreement contained clear language allowing the Hamtils to list any representations

upon which they were relying and blank spaces for the representations to be listed. Moreover, the record reveals that the Hamtils' attorney specifically wrote "any ?" on these blank lines while revising the agreement. The Hamtils, however, did not make any notations in these blanks. As a result, the Hamtils agreed in writing that they were not relying on any representations by Nichols, Abbott, or Jarvis. The agreement is unambiguous, and there is no cause to allow the Hamtils to present parol evidence to establish a material fact in dispute.

We further conclude that real estate brokers may protect themselves from negligent misrepresentation actions by disclaiming knowledge of the property's defects and having a buyer or seller acknowledge such disclaimer. Such protection is not against public policy and, in fact, helps to clarify the law and the role of those involved in real estate matters.

Reversed and remanded with directions.