(26 P.3d 701)
No. 85,368

Phyllis White, *Appellant*, v. The J.D. Reece Company d/b/a J.D. Reece Realtors, *Appellee*.

Opinion filed June 1, 2001.

*Robert A. Babcock*, of Baker Sterchi Cowden & Rice, L.L.C., of Kansas City, Mo., and *John P. Patterson, James S. Kreamer*, and *Kara Trouslot Stubbs*, of Baker Sterchi Cowden & Rice, L.L.C., of Overland Park, for appellant.

*Robert S. Caldwell, Louis A. Cohn*, and *Loren W. Moll*, of Caldwell & Moll, L.C., of Overland Park, for appellee.

Before Pierron, P.J., Green and Beier, JJ.

Green, J.: Phyllis White appeals from the trial court's judgment granting summary judgment to J.D. Reece Company (J.D. Reece) in White's breach of contract and breach of fiduciary duty claims. On appeal, White contends that because genuine issues of material fact remained in issue, the trial court erred in granting J.D. Reece's motion for summary judgment. We agree and reverse and remand for trial.

On September 1, 1995, White entered into a written contract to purchase a home from Robert McKinley. J.D. Reece is a well-known real estate broker, specializing in home sales. Kris Keller, a J.D. Reece real estate agent, served as White's agent for the purchase of the home. Bill Cannon, also a J.D. Reece real estate agent, acted as McKinley's agent in this transaction.

Because Cannon and Keller were both agents of J.D. Reece, a dual agency agreement was signed by White, McKinley, Keller, and Cannon. Under the dual agency disclosure, Keller and Cannon agreed to the following:

> "As a dual agent, the Realtor has the duty to make a full, fair and timely disclosure of all material facts and information within the Realtor's knowledge or readily available to the Realtor which might in any way affect either the Seller's or the Buyer's rights and interest or otherwise influence either party's actions or decisions in connection with the contemplated transaction."

White signed the dual agency disclosure on September 1, 1995.

On September 2, 1995, White signed a seller's disclosure statement, which McKinley had prepared. The statement purported to disclose to White all material defects of which McKinley was aware. The statement contained no mention of any structural damage to the house. Under the caption "BUYERS' ACKNOWLEDGE-MENT AND AGREEMENT" the seller's disclosure statement stated the following:

> "1. I understand and agree that the information in this form is limited to information of which SELLER has actual knowledge and that SELLER need only make an honest effort at fully revealing the information requested.
> "2. This Property is being sold to me without warranties or guaranties of any kind by SELLER or BROKER concerning the condition or value of the Property.
> "3. I agree to verify any of the above information, and any other important information provided by SELLER or BROKER (including any information obtained through the multiple listing service) by an independent investigation of my own. I have been specifically advised to have the Property examined by professional inspectors.
> "4. I acknowledge that neither SELLER nor BROKER is an expert at detecting or repairing physical defects in the Property.
> "5. I specifically represent that there are no important representations concerning the condition or value of the Property made by SELLER or BROKER

on which I am relying except as may be fully set forth in writing and signed by them."

This disclosure statement drastically limited Keller's and Cannon's responsibility to White and placed the responsibility for investigating the conditions of the property on White.

White decided to have an independent investigation done on the condition of the house. White, on Keller's recommendation, hired Terra-Firma, a licensed mechanical and structural inspection company, to inspect the home. White testified in her deposition that Keller recommended Terra-Firma because he had worked with the company in the past. White also testified that Keller did not furnish the names of any other inspection companies. White, again based on Keller's advice, did not accompany the inspector when he went through the house. After the inspection, the inspector orally stated to White that an electrical box was overloaded and needed to be replaced; that the outer garage foundation wall was cracked, was not supportive, and needed to be repaired; and that the fireplace flue was missing a cap and the flashing was not sealed.

As a condition of the sale, Keller prepared a list of items to be repaired based on the oral representations made by the inspector. The itemized list of repairs was typed on J.D. Reece's stationery and forwarded to White for her approval. The condition of the sale stated:

"September 13, 1995

"In reference to purchase of 6143 Granada, contract date 9-1-95, buyer Phyllis White agrees to accept all conditions as presented in Terra Firma inspection no. 6-12500, except for the following:

1.  all recommendations for electrical systems
2.  north garage foundation wall at northeast corner that has cracked and settled and is no longer supportive.
3.  fireplace flue with improper flashing

"Buyer also agrees to add 100 dollars to the 100 dollars already promised for repairs.

Buyer:        Buyer's Agent:
Phyllis White      Kris Keller

_____   _____"

Both White and Keller signed this condition.

Terra-Firma issued a written report, dated September 12, 1995, on the home. Keller received a facsimile copy of the report on September 12, 1995, and testified that he then forwarded a copy of the report to White on that same day. Although White acknowledged receiving the report, she maintained that she did not receive a copy of the report until after she had received and signed the list of repairs compiled by Keller. White further testified that she did not read the report because she trusted the oral report of the inspector. White also testified that she never discussed the Terra-Firma report with Keller or Cannon.

White testified that when the items compiled by Keller had been repaired, she wanted to have the home reinspected. White further testified that Keller told her that a reinspection of the home was unnecessary.

When White later sought to refinance the mortgage on her home, she learned that the house had structural damage along the east wall of the house. White then read the inspection report issued by Terra-Firma. The report contained the following paragraph:

"North garage foundation wall at the northeast corner is cracked and settled and is no longer supportive at this area. A qualified foundation repair contractor should evaluate and repair as needed. **Cracking noted on east and west foundation walls. Cracking and inward movement was noted on the east foundation wall. Cracking was observed in the basement floor slab. Evidence of past water entry was noted.**" (Emphasis added.)

White maintained that she informed Keller on several occasions that she was not interested in a house with structural damage, and Keller never mentioned the damage to her.

White sued J.D. Reece, asserting that the company breached its contract with her to make full disclosure regarding the condition of the property, breached its fiduciary duty to her, and violated the Kansas Consumer Protection Act. J.D. Reece moved for summary judgment, arguing that the parties had contracted to limit the company's liability. Determining that Keller complied with K.S.A. 1995 Supp. 58-30,107(a)(3)(D) and(b) when he told White to retain Terra-Firma to perform an independent investigation of the property, that White relied on the inspector's representation of the property, and that she limited Cannon's liability by signing the

seller's disclosure statement, the trial court granted summary judgment to J.D. Reece.

White argues that the trial court improperly granted summary judgment because genuine issues of material fact remained. Our standard of review is as follows:

> "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought." *Bergstrom v. Noah*, 266 Kan. 847, 871, 974 P.2d 531 (1999).

An appellate court applies the same rules and where reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. 266 Kan. at 871-72.

The trial court relied at least partially on K.S.A. 1995 Supp. 58-30,107(a)(3)(D) and(b) to grant J.D. Reece's summary judgment motion. The trial court determined that Keller had complied with those subsections by telling White to obtain Terra-Firma to perform an inspection of the property. K.S.A. 58-30,101 *et seq.*, commonly known as the Brokerage Relationships in Real Estate Transactions Act (BRRETA), was enacted during the 1995 legislative session and did not take effect until January 1, 1996, 4 months after the transaction in the present case occurred. K.S.A. 1995 Supp. 58-30,101.

On appeal, J.D. Reece acknowledges the statute did not take effect until January 1, 1996, and may or may not apply to this case, but argues the statute merely codified existing common law. In support, J.D. Reece cites the *Minutes of the Senate Committee on Judiciary*, April 7, 1995, p. 2; *Minutes of the Senate Committee on Judiciary*, March 21, 1995, p. 2 (BRRETA is a "comprehensive codification of real estate proceedings, liabilities, relationships of the parties in real estate transactions, etc.").

We believe the common law existing at the time of the present transaction imposed a greater burden on statutory agents than that imposed by BRRETA. The pre-BRRETA license law required real estate brokers to disclose what they knew as well as everything they

should have known about the condition of the property. K.S.A. 58-3062(a)(34); see also *Johnson v. Geer Real Estate Co.,* 239 Kan. 324, 720 P.2d 660 (1986) (sellers told real estate broker they were on city sewer system; jury determined that, although sellers did not lie and did not know property was on septic tank, the broker should have known). On the other hand, BRRETA requires brokers to disclose only what they actually know and to suggest to real estate consumers that they use independent third-party inspections on matters that are outside the real estate broker's expertise. See Jarboe, *Brokerage Relationships in Real Estate Transaction Act,* 68 J.K.B.A. 36 (May 1999). We determine that because this transaction was pre-BRRETA, the trial court erred in applying K.S.A. 1995 Supp. 58-30,107(a)(3)(D) and(b) to this case.

The trial court also determined that because White had relied solely on the inspector's advice concerning the condition of the property, summary judgment in favor of J.D. Reece was proper. Although White relied on the oral report made by the inspector, Keller inserted himself in White's dealings with the inspector. Keller told White not to accompany the inspector while he inspected the property. Keller drafted a list of repairs to be made and submitted them to White before she received the inspector's report. After the repairs were completed, Keller told White that a reinspection of the property would be unnecessary.

"Factual inferences tending to show triable issues must be considered in the light most favorable to the existence of those issues." *Seabourn v. Coronado Area Council, B.S.A.,* 257 Kan. 178, 189, 891 P.2d 385 (1995).

We determine that genuine issues of material fact remained as to whether White relied solely on the inspector's advice. The evidence indicates that Keller took an active role in determining what repairs were needed and what repairs would be made. As a result, Keller controlled the course of repairs that were to be made. The evidence further indicates that White relied on Keller's advice that all necessary repairs had been completed and that a reinspection of the property was unnecessary. Keller's assurances that the repairs had been made induced White to complete the purchase of the property. As a result, the trial court erred in granting summary

judgment on the disputed material fact as to whether White relied solely on the inspector's advice concerning the condition of the property.

Finally, the trial court granted summary judgment based on White signing the seller's disclosure statement. J.D. Reece successfully argued that under the seller's disclosure statement, White agreed that she would not rely on Keller or Cannon in determining the condition of the property. Further, Keller told White to secure an independent investigation of the property, which she did. As a result, J.D. Reece contends this limited Keller's liability for any claims related to the condition of the property.

The seller's disclosure statement stated "that neither SELLER nor BROKER is an expert at detecting or repairing physical defects in the Property." Nevertheless, Keller abandoned his position of a neutral party concerning the condition of the property when he inserted himself into the middle of the independent investigation of the property. As stated earlier, Keller took control over the course of repairs to be made. When Keller received a copy of the inspection report, he was obligated to review the report to see if any other repairs needed to be made. Had Keller done this, he would have discovered the "[c]racking and inward movement [along] the east foundation wall," and would have told White that the east foundation wall required correction. Moreover, under the dual agency agreement, Keller had a "duty to make a full, fair and timely disclosure of all material facts and information within [his] knowledge or readily available to [him] which might in any way affect either the Seller's or the Buyer's rights and interest or otherwise influence either party's actions in connection with the contemplated transaction."

J.D. Reece cites *Hamtil v. J.C. Nichols Real Estate*, 22 Kan. App. 2d 809, 923 P.2d 513 (1996), as dispositive of the issue of its liability. *Hamtil* involved a situation where the Hamtils were wanting to buy a house owned by the Herrstroms. The Hamtils were given a seller's disclosure agreement stating the Herrstroms knew of no water leakage or damage in the house and were not aware of any foundation problems. The Hamtils contacted a home inspection

company and a termite inspection firm. Neither reported any problems with the house.

Shortly after taking possession of the house, the Hamtils noticed water damage and rotted wood. They brought claims of negligence and negligent misrepresentation against the realty company. The realty company sought summary judgment, claiming the Hamtils were not relying on any representations made by the realtors. The trial court denied summary judgment, holding that the public policy of Kansas "should not allow the language set out in the Buyer's Acknowledgment and Agreement . . . to bar actions by home buyers against real estate brokers for negligent misrepresentation." 22 Kan. App. 2d at 811.

In reversing, this court, citing *Boegel v. Colorado Nat'l Bank of Denver*, 18 Kan. App. 2d 546, 857 P.2d 1362, *rev. denied* 253 Kan. 856 (1993), stated that courts will enforce contractual provisions entered into knowingly and voluntarily, and the realty company was entitled to summary judgment. The court also noted that the Hamtils inspected the property themselves on more than one occasion, relied on their own professional inspectors, and had the advice of an attorney before signing the buyer's acknowledgement and agreement form. The court further considered the fact that the Hamtils wrote nothing in the space provided for representations upon which they were relying. 22 Kan. App. 2d at 813-14. The court stated in conclusion:

> "We further conclude that real estate brokers may protect themselves from negligent misrepresentation actions by disclaiming knowledge of the property's defects and having a buyer or seller acknowledge such disclaimer. Such protection is not against public policy and, in fact, helps to clarify the law and the role of those involved in real estate matters." 22 Kan. App. 2d at 814.

Although J.D. Reece claims that *Hamtil* shields Keller from any liability, *Hamtil* is distinguishable from the present case. *Hamtil* involved claims of negligence and issues of whether the agents should have known there were problems with the house. The present case involves a claim by White that J.D. Reece and its agents knew of structural problems with the house and failed to disclose them, although required to do so under the previously mentioned

dual agency agreement. As a result, the *Hamtil* holding cannot be applied to the present case.

We determine that when a real estate broker's agent purposely injects himself or herself into the independent investigation of the property to the buyer's detriment, the real estate broker and its agent cannot rely on the seller's disclosure statement to shield themselves from liability.

As a result, the trial court erred in granting summary judgment to J.D. Reece based on the seller's disclosure statement.

Reversed and remanded for trial.