(129 P.3d 656)

No. 93,146

WILLIAM L. and JEANINE L. PHILLIPS, *Appellees,* v. G. RONALD TYLER and LINDA S. TYLER, *Appellants.*

Opinion filed March 10, 2006.

*Alvin D. Herrington* and *Scott E. Sanders,* of McDonald, Tinker, Skaer, Quinn, & Herrington, P.A., of Wichita, for appellants.

*Nicholas S. Dailey* and *Randall K. Rathbun,* of Depew Gillen Rathbun & McInteer, L.C., of Wichita, for appellees.

Before HILL, P.J., GREENE, J., and BUKATY, S.J.

HILL, J.: We must decide in this case whether certain contractual provisions defeat a negligent misrepresentation claim made by the buyers against the sellers of a home in Wichita. From our review of the agreements, we hold that the district court should have granted summary judgment to the sellers because three provisions from their agreements, when read together, shielded the sellers from a negligent misrepresentation claim. First, the buyers agreed that they were relying only on their own judgment and on their own inspections of the house. Second, the buyers accepted the property without any express or implied warranties by the sellers. Third, the buyers stated they were relying on no representations made by the sellers in order to make the purchase. We reverse the judgment of the district court and remand with instructions to enter judgment on behalf of the sellers.

*Facts and Prior Proceedings*

William L. and Jeanine L. Phillips purchased a house from G. Ronald Tyler and Linda S. Tyler in Wichita during October 1998. The Phillips sued the Tylers for negligent misrepresentation, negligent failure to repair, fraud, and nuisance in May 2003 because of the many defects they discovered in the house. The defects were apparently from water infiltration in the roof and walls. When the house was constructed, no "kick-out flashings" were installed where the roof terminated against the house's exterior walls, thus allowing water to flow down into the exterior walls. The buyers' negligent failure to repair and nuisance claims were dismissed by the trial court by summary judgment, and the remaining claims were submitted to a jury.

For their negligent misrepresentation claim, the buyers alleged that the disclosure statement signed by the sellers was misleading because it was inconsistent when the sellers first indicated that the roof had leaked during the Tylers' ownership of the house and that

repairs were made but then the document also indicated that the roof had not been "replaced/repaired" during the Tylers' ownership. In fact, the Tylers had three different roofers make repairs to the roof a total of 10 times between 1992 and when the Tylers sold the house to the Phillips.

The buyers sought damages for cost of repairs, cost to remove mold, and consequential damages for being required to maintain two residences. After finding the sellers at fault only on the negligent misrepresentation claim and no fraud, a jury awarded the buyers $900,000 as repair costs and $198,811.70 for the loss of use of their home. The Tylers appeal, claiming, among other things, that summary judgment should have been granted on the negligent misrepresentation claim since that claim was barred by written contracts signed by the Phillips.

*Standard of Review*

In order to address this issue, we must interpret some written instruments signed by the parties. This is a matter of law over which we have unlimited review:

"The interpretation and legal effect of written instruments are matters of law, and an appellate court exercises unlimited review. Regardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect. [Citation omitted.]" *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 763, 27 P.3d 1 (2001).

*Points of Law*

I. Definition of Tort of Negligent Misrepresentation

Negligent misrepresentation was first officially recognized as a cause of action in Kansas in *Mahler v. Keenan Real Estate, Inc.*, 255 Kan. 593, 604-605, 876 P.2d 609 (1994), when our Supreme Court adopted the Restatement (Second) of Torts §552 (1976) as the definition of the tort in Kansas. In *Mahler*, the court reversed a district court's order granting summary judgment to a real estate company that held the realtor could not be held liable for false statements the agent made to the buyers about water and sewage problems. Instead, the Supreme Court held that negligent misrepresentation applies to suppliers of commercial information in favor of users of such information in their commercial transactions. The

*Mahler* court also noted that the major difference between the torts of negligent misrepresentation and fraudulent misrepresentation is that the latter requires proof that the defendant knew the statement was untrue or was reckless about whether the statement was true or false, while the former merely requires proof that the defendants failed to exercise reasonable care or competence to obtain or communicate true information. 255 Kan. at 604.

Later, this tort's definition was refined in *Gerhardt v. Harris*, 261 Kan. 1007, 1019, 934 P.2d 976 (1997), to include negligent supply of commercial information to others *for guidance in their business transactions*. And then, in *Bittel v. Farm Credit Svcs. of Central Kansas, P.C.A.*, 265 Kan. 651, Syl ¶ 7, 962 P. 2d 491 (1998), the Supreme Court ruled that the tort applies only to cases of misrepresentation of factual, commercial information and not to statements of future intent. Accordingly, we use these three cases as a foundation of our understanding of the tort claimed by the buyers.

II. Contract Provisions

We must examine three provisions from the contracts of the parties. First, paragraph 20 of the purchase contract, then a provision of the property acceptance agreement, and, finally, a section from the disclosure statement.

Paragraph 20 of the purchase contract indicates the buyers are relying upon their own judgment and that of their inspectors of the property:

"20. INSPECTION: The Buyer has carefully examined the premises and the improvements located thereon, and in making the decision to buy the property, the Buyer is relying wholly and completely upon Buyer's own judgment and the judgment of any contractors or inspectors Buyer may have selected.
. . . .
"Seller agrees to give Buyer reasonable access to the property before the closing date so that Buyer and Buyer's representatives may, at Buyer's expense, re-inspect the property for confirmation of condition or to inspect any repairs made pursuant to this paragraph.
"The parties agree and the Buyer represents that once the Contract has in fact been closed, that Buyer in all respects again has acknowledged that Buyer has accepted the premises without condition or qualification."

Next, we list the pertinent provision from the property acceptance agreement that advises that the buyers have had the opportunity to inspect the premises and are admitting that there are no warranties about the property:

"The Buyer named herein agrees that he has had an opportunity to inspect the above referenced home in accordance with paragraph 20 of the purchase contract. The Buyer now accepts the home in its current condition and will make no further claims or demands upon the Seller or his agent for repairs. There are no expressed or implied warranties that have been made by the Seller, J.P. Weigand & Sons or Cindy Carnahan, relative to the sale of this property."

Finally, from the disclosure statement, the following section reveals the buyers, in making this purchase, are not relying on any representations concerning the condition of the property:

"Buyer agrees to verify any of the above information that is important to him/her by an independent investigation. Buyer has been advised to have the property examined by professional inspectors. Buyer acknowledges that neither seller nor any REALTOR® involved in this transaction hold themselves out to be an expert at detecting or repairing physical defects in the property. Buyer states that no important representations concerning the condition of the property are being relied upon except as disclosed above or as fully set forth as follows: [Nothing further set forth by the Phillips.]"

### Discussion

Two cases, *Alires v. McGehee*, 277 Kan. 398, 85 P.3d 1191 (2003), and *Hamtil v. J.C. Nichols Real Estate*, 22 Kan. App. 2d 809, 923 P.2d 513 (1996), lead us to the conclusion that contract provisions between buyers and sellers can defeat a claim of negligent misrepresentation and the district court should have granted the sellers summary judgment.

In *Alires*, the plaintiffs bought a house from the defendants. In a disclosure statement, the defendants acknowledged leaking in the basement and explained the leakage as a result of a broken pipe that had been repaired. The defendants failed to mention other instances of leaks discovered in the basement. The defendants also verbally told the plaintiffs that the basement did not leak. The defendants claimed that they simply forgot about the other instances. After the plaintiffs moved into the house, they noticed leaks in the basement.

The purchase contract in *Alires* specifically stated that the plaintiffs were purchasing the property "as is." 277 Kan. at 401. However, the contract allowed the plaintiffs to conduct inspections of the property and required the defendants to pay the first $250 of repairs. If more than $250 was needed for repairs, then either party could pay the excess amount or the contract could be cancelled. The purchase contract also contained a provision that stated:

" 'If inspections are not performed regarding all or part of the property, Buyer is bound by whatever information an inspection would have revealed, and waives any claim, right or cause of action relating to or arising from any condition of the property that would have been apparent had inspections been performed.' " 277 Kan. at 401.

In *Alires*, the plaintiffs waived the inspections. The plaintiffs claimed that they relied on the defendants' representation that the basement did not leak. At trial, the court found that the defendants knew about the leak problems in the basement and failed to disclose the problem to the plaintiffs.

After engaging in a lengthy discussion regarding cases that have interpreted provisions limiting liability in real estate contracts, the court in *Alires* held:

"Under the facts of this case, the buyer of real estate could not reasonably rely upon representations of the seller when the truth or falsity of the representation would have been revealed by an inspection of the subject property and the misrepresentations were made prior to or as part of the contract in which the buyer contracted for the right to inspect, agreed that the statements of the seller were not warranties and should not replace the right of inspection, declined inspection, and waived any claims arising from defects which would have been revealed by an inspection. There is no showing in the record that the subsequent contract addendum which contained the waiver of the right to inspect was induced by any additional misrepresentations of the seller. Thus, although we disagree with the analysis of the Court of Appeals, we reach the same conclusion that the Alireses were not justified in their reliance upon the misrepresentations of Mrs. McGehee." 277 Kan. at 411-12.

In this case, paragraph 20 of the purchase contract makes it clear that the Phillips were relying solely on their own judgment and that of their inspectors in making their determination to buy the house. Thus, under the reasoning in *Alires*, the Phillips could not reasonably rely on the Tylers' representations in the disclosure

statement. Furthermore, similar to *Alires*, the Phillips were allowed the right to reinspect the house before closing to ensure all repairs had been made. Just like the plaintiffs in *Alires*, the Phillips did not exercise their right to reinspect the house. This right to reinspect is further evidence that the Phillips could not reasonably rely on the representations made by the Tylers.

In *Hamtil*, the plaintiffs were purchasers of a house. The Seller's Disclosure Statement indicated that the sellers were not aware of water leakage or damage to the house and that they were not aware of any problems with the foundation or roof of the house. The plaintiffs had inspectors examine the house, but they did not find any problems. Shortly after closing on the real estate contract and moving into the house, the plaintiffs discovered that water had leaked into the house in several spots and that there was rotted wood throughout the house.

The plaintiffs in *Hamtil* sued everyone involved in the transaction, including J.C. Nichols Real Estate and its agents, Anne Abbott, and Gabrielle Jarvis. Abbott and Jarvis acted as listing agents for the house. The plaintiffs in *Hamtil* claimed Abbott and Jarvis made false statements about the house and claimed negligence and negligent misrepresentation by Nichols and its agents. Nichols, Abbott, and Jarvis moved for summary judgment, claiming that the plaintiffs could not have reasonably relied on any of their statements due to provisions in the Buyer's Acknowledgment and Agreement.

In *Hamtil*, the Buyer's Acknowledgment and Agreement stated in relevant part:

" '1. I HAVE CAREFULLY INSPECTED THE PROPERTY. SUBJECT TO ANY INSPECTIONS ALLOWED UNDER MY CONTRACT WITH SELLER, (And repairs to be made as therein required), I AGREE TO PURCHASE THE PROPERTY IN ITS PRESENT CONDITION ONLY, WITHOUT WARRANTIES OR GUARANTEES OF ANY KIND BY SELLER OR ANY REALTOR CONCERNING THE CONDITION OR VALUE OF THE PROPERTY.

" '2. I AGREE TO VERIFY ANY OF THE ABOVE INFORMATION THAT IS IMPORTANT TO ME BY AN INDEPENDENT INVESTIGATION OF MY OWN. I HAVE BEEN ADVISED TO HAVE THE PROPERTY EXAMINED BY PROFESSIONAL INSPECTORS.

" '3. I ACKNOWLEDGE THAT NEITHER SELLER NOR ANY REALTOR INVOLVED IN THIS TRANSACTION IS AN EXPERT AT DETECTING OR REPAIRING PHYSICAL DEFECTS IN THE PROPERTY. I STATE THAT NO IMPORTANT REPRESENTATIONS CONCERNING THE CONDITION OF THE PROPERTY ARE BEING RELIED UPON BY ME EXCEPT AS DISCLOSED ABOVE OR AS FULLY SET FORTH AS FOLLOWS:

_____.' " 22 Kan. App. 2d at 811.

In determining that the defendants were entitled to summary judgment, the court in *Hamtil* found that the plaintiffs' decision to rely on their own inspectors was "an expression of not relying on any statement made by a sales agent . . . ." 22 Kan. App. 2d at 813. The court in *Hamtil* went on to state:

"Kansas follows the 'general principle that competent parties may make contracts on their own terms, provided they are neither illegal nor contrary to public policy, and that in the absence of fraud, mistake, or duress a party who has fairly and voluntarily entered into such a contract is bound.' [Citation omitted.] The agreement contained clear language allowing the Hamtils to list any representations upon which they were relying and blank spaces for the representations to be listed. Moreover, the record reveals that the Hamtils' attorney specifically wrote 'any?' on these blank lines while revising the agreement. The Hamtils, however, did not make any notations in these blanks. As a result, the Hamtils agreed in writing that they were not relying on any representations by Nichols, Abbott, or Jarvis. The agreement is unambiguous, and there is no cause to allow the Hamtils to present parol evidence to establish a material fact in dispute." 22 Kan. App. 2d at 813-14.

*Hamtil* is distinguishable from the present case in that the plaintiffs in *Hamtil* were suing real estate agents while the plaintiffs in this case are suing the sellers of the house. But *Hamtil* is instructive because it indicates that contractual provisions limiting liability can be used to defeat a claim of negligent misrepresentation on summary judgment. The contractual provisions at issue in this case are not against public policy and the defendants' claim does not involve fraud, mistake, or duress. Accordingly, the provisions are enforceable. Thus, the buyers were contractually bound to rely on their own opinions and those of their inspectors. The buyers could not reasonably rely on the representations made in the disclosure statement they complain about. Accordingly, the buyers could not prove

an element of negligent misrepresentation and summary judgment should have been granted.

The buyers claim that the fact that repairs, which were required to be made under an amended sales contract, were not made somehow supports the negligent misrepresentation claim. They also point to the agreement signed at closing requiring the defendants to ensure that repairs be made to the roof as evidence of negligent misrepresentation. But neither of these documents give support to a claim of negligent misrepresentation. Nothing in the documents negate the other provisions requiring the plaintiffs to rely on their own and their inspector's observations regarding the condition of the house. While the buyers may have a breach of contract claim if the sellers failed to comply with their obligations under the contract, the purchase contract amendment and the contract for roof repairs do not support a finding of negligent misrepresentation.

We also point out that the buyers' inspection of the roof revealed evidence of previous roof leaks and other water infiltration problems. While the Phillips may not have known the full extent of the previous roof leaks, their inspection did put them on notice that the roof had leaked in the past. Additionally, their inspector's report stated that the roof tiles "are installed such that flashing details are covered & not visible, therefore, inspection is limited." Thus, the Phillips also knew that their expert's inspection was limited at the time they purchased the house.

The inspection report clearly advises that there is "(e)vidence of past leakage where roofs [*sic*] terminate against walls (no "kick-out" at ends of flashings.)" And then again:

"11) Exterior insulation finish system (EIFS), also known as 'synthetic stucco,' has been installed as a 'water—barrier' system (intended to prevent leakage behind siding). Most major manufactures [*sic*] now recognize that it is nearly impossible to prevent water from passing behind siding, and now recommended that EIFS be installed only as 'water—managed' systems (that allow water to drain out, if it gets behind siding).

"Testing with an electronic wet-wall detector indicated possible moisture below all roof—to—wall joints and around or below most windows. Potential for hidden dry—rot exists . . . . Recommend have further evaluated and repairs made, if needed, by a qualified licensed contractor."

Thus, the Phillips knew that there were many potential problems with the house. The Phillips' decision to not require a more detailed test of the roof, coupled with their decision to allow the Tylers to contract for limited liability, prevents a claim for negligent misrepresentation.

Furthermore, while the disclosure statement made by the sellers may have been ambiguous, the disclosure statement did indicate that the roof had leaked and that repairs had been made. Apparently, the Phillips did not seek further information regarding the nature of the leaks or repairs.

We need not address the remaining claims of error by the sellers.

Reversed and remanded with directions to enter judgment in favor of the Tylers.