(178 P.3d 66)
No. 98,025

KAIL M. KATZENMEIER and REBECCA J. KATZENMEIER,
*Appellants,* v. LYSLE R. OPPENLANDER, *Appellee.*

Opinion filed March 14, 2008.

*Richard H. Seaton,* of Seaton, Seaton & Gillespie, L.L.P., of Manhattan, for appellants.

*William J. Bahr,* of Arthur-Green, L.L.P., of Manhattan, for appellee.

Before MARQUARDT, P.J., GREEN and LEBEN, JJ.

GREEN, J.: Kail and Rebecca J. Katzenmeier appeal from a summary judgment granted in favor of Lysle R. Oppenlander on their intentional and negligent misrepresentation claims. They argue that the trial court misinterpreted and misapplied a factually similar

case, *McLellan v. Raines*, 36 Kan. App. 2d 1, 140 P.3d 1034 (2006), or, alternatively, that *McLellan* was wrongly decided. Nevertheless, because the Katzenmeiers waived their right to rely on Oppenlander's representations and relied on their own inspections, summary judgment was appropriate. Accordingly, we affirm.

The Katzenmeiers' primary business was property management, and they had been managing properties since 1994. In June 2005, they owned 25 properties; the majority of their properties were multifamily dwellings.

This dispute arose after the Katzenmeiers purchased two eight-plex apartment buildings from Oppenlander in 2003. Oppenlander gave the Katzenmeiers a "Sellers' Disclosure" (disclosure) statement. This document represented that the buildings did not have any "drainage or flood problems," that Oppenlander was not aware of any water leakage in the basements, and that there had never been any water leakage, accumulation, or damage in the basements. Yet, the disclosure statement did state that the buildings had cracks in the walls or the foundations. The disclosure statement also contained a "Buyers' Acknowledgment and Agreement," which stated, in pertinent part:

"5. I specifically represent that there are no important representations concerning the condition or value of the Property made by SELLER or BROKER on which I am relying except as may be fully set forth in writing and signed by them."

The disclosure statement also gave notice to the buyers as follows:

"This is a disclosure of SELLER'S knowledge of the condition of the Property as of the date signed by SELLER and is not a substitute for any inspections or warranties that BUYER may wish to obtain. It is not a warranty of any kind by SELLER or a warranty or representation by the BROKER."

Both the Katzenmeiers and Oppenlander signed the disclosure statement.

The real estate contract authorized the Katzenmeiers to conduct inspections of the property:

"As part of the consideration herein, [the Katzenmeiers] shall have until March 28, 2003, at 5:00 P.M., to conduct at [the Katzenmeiers] expense any inspections of the subject property desired by [the Katzenmeiers]. Such inspection(s) may cover any aspect of the subject property, including, but not limited to, the following: environmental hazards, foundation, roof, fireplace, chimney, sliding windows

or doors, ceilings, floors, the exterior, the interior, any wall, fence, and all included appliances, heating and cooling systems, plumbing, electrical systems, and other mechanical equipment. Should [the Katzenmeiers'] inspection(s) reveal any condition(s) that is/are unsatisfactory to [the Katzenmeiers], then such unsatisfactory condition(s), together with specific corrective measures requested by [the Katzenmeiers], shall be reported in writing to Seller or Seller's real estate agent within said time period for action. If Seller, within two (2) working days after delivery of the statement of unsatisfactory condition(s) with specific correction measures, elects in writing to make the requested repairs prior to closing, [the Katzenmeiers] shall remain bound to purchase the property in accordance with this contract. If Seller elects not to make the requested repairs, or if Seller makes a counter offer, [the Katzenmeiers] shall have two (2) working days to either (a) waive the repairs and accept the property in existing condition, (b) respond to the counteroffer, or (c) cancel this contract, in which event the earnest money deposit, less accrued escrow fees, shall be returned to [the Katzenmeiers] and all parties shall be released from further liability hereunder. In the event that [the Katzenmeiers] make[] no requirements within said time period, [the Katzenmeiers] shall be deemed to have waived [their] rights under the paragraph and shall be deemed to be satisfied with the existing condition of the items set forth above, subject to other provisions of this contract."

The Katzenmeiers opted to have the property inspected. They hired Charles Bissey, a structural engineer, and Dennis Adams, a mechanical inspector, to conduct inspections. The inspectors found no evidence of water damage. Nevertheless, Bissey noticed water on the floor of a bathroom. According to Bissey, Oppenlander stated that he stopped the leak by regrading the dirt surrounding the building. The inspections also discovered problems with the sidewalk which could cause water and drainage issues.

Closing took place on May 1, 2003. On October 14, 2004, the Katzenmeiers sued Oppenlander. They alleged that Oppenlander had made intentional or reckless misrepresentations with the intent to deceive them. They further alleged that the buildings had serious leaking and moisture problems. Moreover, they asserted that Oppenlander knew of these problems and had concealed them during their negotiations. They further alleged that they could furnish evidence from two tenants that the buildings leaked water repeatedly. They also alleged that when Oppenlander purchased the buildings he received a seller's disclosure statement telling him about water leakage.

Before trial, Oppenlander moved for summary judgment. The trial court granted the motion.

*Did the Trial Court Err in Granting Summary Judgment by Finding That the Katzenmeiers Had Waived Their Right to Rely on the Seller's Disclosure Statement?*

The Katzenmeiers first maintain that the trial court erred in granting Oppenlander's motion for summary judgment. The trial court determined that under the *McLellan*, 36 Kan. App. 2d 1, precedent, to prove their claim of intentional misrepresentation, the Katzenmeiers had an affirmative duty to set forth in writing which specific representations in the disclosure statement that they had relied on in signing the contract. Because the Katzenmeiers did not specify in writing any representations, the trial court held that they could not prove that they had reasonably relied on any representations made by Oppenlander. The Katzenmeiers contend that the *McLellan* court could not have intended to prevent a claim such as theirs where the seller lied in the disclosure statement and then allegedly committed physical acts to cover it up. They also assert that the trial court misinterpreted the meaning of "waiver." Moreover, the Katzenmeiers contend that they could not have voluntarily given up their right to rely on Oppenlander's disclosures.

In reviewing whether the trial court erred in granting summary judgment, this court reviews the facts in the light most favorable to the Katzenmeiers:

"' " " 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' " ' [Citations omitted.]" *Korytkowski v. City of Ottawa*, 283 Kan. 122, 128, 152 P.3d 53 (2007).

When there is no factual dispute and our decision requires us to interpret and give legal effect to a written contract, as there is here, appellate review of an order regarding summary judgment is de novo. *Botkin v. Security State Bank*, 281 Kan. 243, 248, 130 P.3d 92 (2006).

Both parties discuss the applicability of *McLellan* to this case. In *McLellan*, the seller's disclosure statement used the identical language of paragraph 5. The *McLellan* court determined that the "unambiguous language of paragraph 5 clearly directs McLellan to either indicate which representations she was relying on or agree to rely on none of them. She did not so indicate and thus waived her right to rely on the [seller's] representations in the disclosure statement." 36 Kan. App. 2d at 8. Further, the *McLellan* court stated that the disclosure statement "clearly imposes a burden on McLellan to inspect the property on her own and not to rely on the seller's or broker's information in purchasing the property." 36 Kan. App. 2d at 10. Similarly, because the Katzenmeiers did not declare which representations they were relying on, it would seem that they had agreed not to rely on any of them.

In an attempt to distinguish *McLellan* from their case, the Katzenmeiers focus on the fact that McLellan's primary claim was for a breach of contract while their claim was for intentional misrepresentation, a tort. They assert that this difference requires a different analysis and, therefore, *McLellan* should not apply. Nevertheless, in *McLellan*, the court also discussed and dismissed a claim for negligent misrepresentation. See 36 Kan. App. 2d at 6-9. A claim for intentional misrepresentation requires a misrepresentation of fact for the purpose of inducing another to act in reliance upon the misrepresentation. See *Alires v. McGehee*, 277 Kan. 398, 403, 412, 85 P.3d 1191 (2004); Restatement (Second) of Torts § 525 (1976). Although a claim for negligent misrepresentation has different elements than a claim for intentional misrepresentation, both torts require a plaintiff to have relied on a misrepresentation. See *Mahler v. Keenan Real Estate, Inc.*, 255 Kan. 593, 603-04, 876 P.2d 609 (1994); Restatement (Second) of Torts § 552 (1976).

Indeed, the *McLellan* court, in discussing *Hamtil v. J.C. Nichols Real Estate*, 22 Kan. App. 2d 809, 811, 923 P.2d 513 (1996), de-

termined that the sellers would not be liable under a negligent misrepresentation claim because McLellen, the buyer, could not show justifiable reliance. *McLellan,* 36 Kan. App. 2d at 8-11. In *Hamtil,* the plaintiffs asserted a negligent misrepresentation claim against the defendants. Finding that the plaintiffs had agreed in writing not to rely on the representations of the defendants, the *Hamtil* court granted summary judgment in favor of the defendants on the plaintiffs' negligent misrepresentation claim. 22 Kan. App. 2d at 811. Likewise, in finding a lack of reliance on McLellan's part, the *McLellan* court stated: "McLellan had inspections performed by professional inspectors and chose to rely on them." 36 Kan. App. 2d at 11.

Moreover, even in a claim for fraud in the inducement, our Supreme Court has held that contract language governs whether the buyers' reliance was reasonable. *Alires,* 277 Kan. at 411-12. As a result, we determine that the Katzenmeiers' distinction attempted between their tort claim and McLellan's contract claim, in analyzing the claims as they relate to the disclosure statement, is neither persuasive nor valid.

In addition, this court has recently applied *McLellan's* logic to a case involving intentional misrepresentation. In *Brennan v. Kunzle,* 37 Kan. App. 2d 365, 154 P.3d 1094, *rev. denied* 284 Kan. 945 (2007), the sellers' disclosure statement once again contained the exact language used both here in paragraph 5 and in *McLellan.* The buyers alleged fraudulent misrepresentations by the sellers. The *Brennan* court held that because the buyers did not indicate which representations they were relying on, they had waived their right to rely on the disclosure statements. "[T]he [buyers'] failure to specifically set forth the [sellers'] representations on which they were relying precludes their fraudulent misrepresentation claim." 37 Kan. App. 2d at 388.

Here, the Katzenmeiers cannot show that they justifiably relied on Oppenlander's disclosure statement. They hired two professional inspectors to check the property. The inspections turned up evidence of water leakage and possible drainage problems. Although the inspections did not reveal the full extent of the previous water leaks, the inspections put the Katzenmeiers on notice of wa-

ter leaks or drainage problems. This case, however, is unlike *Brennan* where it was alleged that careful inspections had not revealed the defect. See 37 Kan. App. 2d at 384-86. Moreover, this record shows that the Katzenmeiers relied on their own inspections. This fact raises an additional reason that is independently determinative of the Katzenmeiers' intentional misrepresentation claim. We will address this determinative point in more detail later in the opinion.

The Katzenmeiers also argue that they did not voluntarily and intentionally give up their right to rely on Oppenlander's disclosures; therefore, they could not have waived this right. The interpretation and legal effect of a written contract are matters of law over which an appellate court has unlimited review. *Conner v. Occidental Fire & Cas. Co.*, 281 Kan. 875, 881, 135 P.3d 1230 (2006). The language of the disclosure statement clearly explained what the Katzenmeiers needed to do to rely on Oppenlander's representations.

According to the plain language of paragraph 5, a buyer who desired to rely on a seller's disclosure statement needed to state which statements were relied on in writing. We note that the Katzenmeiers maintain that this places buyers in an unfair predicament. There may be some truth to this assertion. In *Brennan*, we quoted Professor William E. Westerbeke, who characterized the seller's disclosure statement and the buyer's acknowledgment and agreement in a real estate contract as essentially a disclaimer of liability: " '[T]his disclaimer could be at odds with cases in which the seller or realtor simply fails to disclose known defects in the house.' [Citation omitted.]" 37 Kan. App. 2d at 386. Nevertheless, the language of the disclosure statement was abundantly clear.

To illustrate, the key language in the seller's disclosure statement in *Alires* stated:

" '4. I acknowledge that neither Seller nor any real estate licensee involved in this transaction is an expert at detecting or repairing physical defects in the property. I state that no important representations concerning the condition of the property are being relied upon by me except as disclosed above or as fully set forth as follows: _____.' " 277 Kan. at 407.

In pointing out an important factual distinction between *McLellan* and *Alires,* the *McLellan* court explained: The disclosure statement

in *Alires* stated that the buyers did not rely on the representations by the seller or broker " 'except as disclosed above.' " *McLellan*, 36 Kan. App. 2d at 12. This quoted phrase allowed the buyers in *Alires* to rely on the representations made in the seller's disclosure statement. See *Alires*, 277 Kan. at 404 ("There was no need for the Alireses to write in the representation on which they were relying because Mrs. McGehee's representation that the basement had leaked only when broken pipes needed repairing was already listed [in the disclosure statement]."). Nevertheless, the disclosure statement in *McLellan* and this case did not contain that " 'except as disclosed above' " language. For this reason, the disclosure statements in *McLellan* and this case required all representations which the buyer relied upon to be fully set forth in writing. See *McLellan*, 36 Kan. App. 2d at 12-13.

To illustrate, paragraph 5 of the buyers' acknowledgment in this case stated: "I specifically represent that there are no important representations concerning the condition or value of the Property made by SELLER or BROKER on which I am relying except as may be fully set forth in writing and signed by them." Under paragraph 5, there was no language connecting this paragraph, like paragraph 4 in *Alires*, with the representations made in the disclosure statement.

Moreover, paragraph 5 indicates that the buyers are not relying on any important representations made by the seller or broker, except when an exception is made by setting forth the important representations in writing, concerning the condition of the property. This exception would require a separate writing, especially when considering paragraph 3 of the buyers' acknowledgment. Paragraph 3 states: "I agree to verify any of the above information, and any other important information provided by SELLER or BROKER . . . by an independent investigation of my own. I have been specifically advised to have the property examined by professional inspectors." Paragraph 3 makes it abundantly clear that the buyers are not relying on any representations by the seller or broker concerning the condition of the property. Moreover, any doubt on this point is vividly illustrated by the following: If the buyers could reasonably rely on the representations contained in

the disclosure statement or any other important information furnished by the seller or broker, the contract language, under paragraph 3, requiring the buyers to verify the representations would be pointless.

Consequently, absent a separate writing setting forth the important representations made by the seller or broker in accordance with the exception under paragraph 5, the buyers here would be obliged to obtain a professional inspection of the property. Based on the contract language, the buyers would need to obtain a professional inspection of the property even though there may be no signs of a defect or no doubts about the representations made by the seller or broker in the disclosure statement. See *Alires*, 277 Kan. at 411-12; see also *Phillips v. Tyler*, 35 Kan. App. 2d 256, 264, 129 P.3d 656, *rev. denied* 281 Kan. 1378 (2006) ("Nothing in the documents negate the other provisions requiring the plaintiffs to rely on their own and their inspector's observations regarding the condition of the house."). As a result, under the reasoning in *Alires, Brennan, McLellan*, and *Phillips*, the Katzenmeiers could not have reasonably relied on the Oppenlander's representations in the disclosure statement.

The concurrence, however, based on a grammatical construction of paragraph 5, says that the Katzenmeiers should have been allowed to rely upon the representations made in the disclosure statements. Yet, because of the contract provisions previously discussed, it would be a mistake to attach legal significance to the grammatical construction.

In examining *Alires*, 277 Kan. 398; *Brennan*, 37 Kan. App. 2d 365; *McLellan*, 36 Kan. App. 2d 1; *Phillips*, 35 Kan. App. 2d 256; *Hamtil*, 22 Kan. App. 2d 809; and *Boegel v. Colorado Nat'l Bank of Denver*, 18 Kan. App. 2d 546, 857 P.2d 1362, *rev. denied* 253 Kan. 856 (1993), it is clear that Kansas courts have adopted a "buyer beware" standard regarding sellers' disclosures. In addition, the *Alires* court made it abundantly clear that a buyer of real estate can not reasonably rely on representations of a seller when the truth or falsity of the representations would have been discovered by an inspection of the property and the misrepresentations were made before or as part of the contract in which the buyer con-

tracted for the right to inspect, agreed that the statements of the seller were not warranties, and acknowledged that the seller's disclosure statement was not a substitute for any inspection that the buyer may have wished to obtain. 277 Kan. at 411-12.

Under the facts of this case, the right to rely on representations made in the disclosure statement does not exist where a purchaser chooses to inspect the property before purchase and, in making such inspection, learns of a defect.

Indeed, the Katzenmeiers agreed to verify any material information by independent investigation. The Katzenmeiers had the property inspected by two professionals. The inspections discovered possible water and drainage problems. Further, the Katzenmeiers acknowledged that neither Oppenlander nor the realtor was an expert at detecting and repairing defects. In contrast, the Katzenmeiers were experienced owners and managers of multifamily dwellings. Finally, the Katzenmeiers stated that they were not relying on any representations other than those, if any, that they had set forth in writing and signed. Yet, the Katzenmeiers did not identify any representations in writing. Given these facts, we determine that the Katzenmeiers did not rely on any representations made by Oppenlander. As a result, the trial court properly granted summary judgment in favor of Oppenlander.

Affirmed.

LEBEN, J., concurring: Called stare decisis by lawyers and others who like Latin, respect for precedent counsels that when a matter has already been decided by a court, we are reluctant to revisit the matter. People rely upon the decisions of courts when making choices in transactions, and lawyers provide advice in these transactions based upon the law as we have already explained it. Indeed, respect for precedent is central to governance under the rule of law. Though precedents sometimes need to be overruled, *e.g.*, *Plessy v. Ferguson*, 163 U.S. 537, 41 L. Ed. 256, 16 S. Ct. 1138 (1896), "the rule of law demands that adhering to our prior case law be the norm" and "[d]eparture from precedent is exceptional." *Randall v. Sorrell*, 548 U.S. 230, 244, 165 L. Ed. 2d 482, 126 S. Ct. 2479 (2006).

I concur in the result reached here by the majority based on this court's recent decisions in *McLellan v. Raines*, 36 Kan. App. 2d 1, 140 P.3d 1034 (2006), and *Brennan v. Kunzle*, 37 Kan. App. 2d 365, 154 P.3d 1094 (2007). In both of those cases, this court held that the same seller's disclosure statement given in our case to the Katzenmeiers could not form the basis for any misrepresentation claim because each buyer had signed a provision at the bottom of the form saying that the buyer did not rely on any representations of the seller "except as may be fully set forth in writing and signed by them." Somehow, that has twice been read by this court as a waiver of any reliance the buyer had on the seller's written disclosures found earlier in the same document and signed by that seller. If I were writing on a clean slate, I would find that the buyer did not waive reliance based on this document.

Let's step back for a moment and look at the practical implication: imagine that you are the buyer's real estate agent in a transaction in which this form is used. The seller has filled out a disclosure form in which the seller specifically agreed "to disclose to buyer all material defects, conditions and facts known to seller which may materially affect the value of the property." The disclosure form also provides that it "is an integral part of the agreement between seller and buyer." Your buyer reads the disclosure, including the seller's statement that water has never leaked into the basement.

Your buyer is understandably relieved but then reads the "buyer's acknowledgment and agreement" at the bottom. Right above the buyer's signature line is a statement that "there are no important representations concerning the condition or value of the property made by seller or broker on which I am relying except as may be fully set forth in writing and signed by them."

After reading that sentence, the buyer then asks you, "Now, if I sign this, can I still rely on what the seller has already said on this very form and signed? Or is it as if the seller hadn't told me that he'd never had any leaks in the basement?" What would you tell them, assuming you haven't read the recent *McLellan* or *Brennan* cases?

The answer seems plain to me. The seller has just made a number of representations in a written document and signed that document. The buyer obviously reviews the document after the disclosures are made because nothing else would make sense, and the buyer's acknowledgment even appears right after the seller's disclosures on the form. The buyer is saying that there are no representations *other than those found on this form* upon which the buyer is relying.

With support from *McLellan* and *Brennan*, however, the majority contends that the "plain language" of that provision requires *the buyer* to prepare some *extra* document "to state which statements they were relying on in writing" and then the additional step of having the seller sign that other document. However, the language of the buyer's acknowledgment does not support that conclusion. The document quotes the buyer: "*I* specifically represent that there are no important representations concerning the condition or value of the property made by seller or broker on which *I* am relying except as may be fully set forth in writing and signed *by them*." (Emphasis added.)

The buyer is unequivocally the subject ("I") of this sentence. Due to the usage of the first-person pronoun, the buyer is grammatically eliminated as a member of the third-person "by them" phrase. If the buyer were the individual required to create an extra document, then a "by me" would have been grammatically demanded in the sentence. In that case, the sentence would have ended "except as may be fully set forth in writing *by me* and signed *by them*."

As such, the seller has already satisfied both parts of the phrase actually used because the seller has set forth in writing and signed the disclosures, all contained in the very same document. To suggest that yet another document was needed for the buyer to be able to rely upon what the seller has already put in writing and signed renders the disclosure statement without any legal effect. The seller may make bald-faced lies in it, and the buyer will not be heard by the courts in complaint. It is unfortunate that both *McLellan* and *Brennan* have bought this argument.

The majority also concludes that any reliance by the Katzen-meiers is precluded by *Alires v. McGehee*, 277 Kan. 398, 85 P.3d 1191 (2004). The majority tells us that *Alires* "made it abundantly clear that a buyer of real estate cannot reasonably rely on repre-sentations of a seller when the truth or falsity of the representations would have been discovered by an inspection of the prop-erty . . . ." 39 Kan. App. 2d at 267. There were no inspections in *Alires*, but here there were two inspections that found no evidence of water damage. The inspections noted only very minor water problems, mainly some water on the floor of a bathroom that the seller said had been fixed by regrading some dirt outside the build-ing. But the importance of such information is far different when the owner has said that he has *never* been aware of *any* water leakage in the building than it would be in the absence of such a representation. A reasonable buyer may want to proceed to pur-chase a building that had only a single instance of water on a bath-room floor over a 10-year period but not want to buy the same building if the owner honestly discloses that it has leaked at least once a month for the past 10 years.

The majority cites *Alires, McLellan, Brennan,* and several other cases for the proposition that "Kansas courts have adopted a 'buyer beware' standard regarding sellers' disclosures." 39 Kan. App. 2d at 267. The majority may well be right. But this is exactly what Professor William E. Westerbeke rightly warned against. His words bear repeating: "[C]ourts should . . . monitor the use of such dis-claimers to ensure that they do not evolve into an unfair device to avoid . . . responsibility in these transactions." Westerbeke, *Sur-vey of Kansas Tort Law: Part II,* 50 Kan. L. Rev. 225, 280 (2002). While I believe that respect for precedent requires me to go along with *McLellan* and *Brennan* because they are two recent published decisions of this court, the Kansas Supreme Court is free to con-sider the issues addressed here without any duty to follow our own past holdings. I encourage the court to do so.

On a motion for summary judgment, all facts are supposed to be viewed in the light most favorable to the non-moving party. The district court granted summary judgment here, based upon *Mc-Lellan,* because it concluded that the Katzenmeiers could not show

any reasonable reliance on any of the seller's representations without some additional writing beyond the seller's disclosure form. If I were writing on a clean slate, I would reverse the district court's grant of summary judgment. Under the standards applicable to summary judgment and the facts of this case, the Katzenmeiers should have had a right to rely upon the representations in the seller's disclosure form, and those representations were material to the transaction.